## COMMONWEALTH v. JAMES JOHNSON ET AL.

APPEAL BY DEFENDANTS FROM THE COURT OF QUARTER SES-
SIONS OF LUZERNE COUNTY.

Argued April 14, 1890—Decided May 12, 1890.

1. Whilst a public road, which has been completely opened and used for
   public travel, cannot be changed in its route by the supervisors, even to
   put it upon its true location as laid out and confirmed by the court:
   Clark v. Commonwealth, 33 Pa. 112 ; Morrow v. Commonwealth, 48 Pa.
   305 ; McMurtrie v. Stewart, 21 Pa. 322 ;
2. Yet, supervisors are liable to indictment, when, in opening a road under
   the order of the court, they make any material change in the line of it,
   as laid out and confirmed, even though in so doing they are following a
   change therein made by their predecessors in office, by whom the open-
   ing was begun but not completed.
3. On the trial of such an indictment, an offer by the defendants to prove
   the amount of the township's indebtedness, without an offer to prove
   further that the township had insufficient assets to pay the debt, or not
   taxable property sufficient to raise the money necessary to complete the
   road as laid out, is not broad enough and is inadmissible.

Before PAXSON, C. J., STERRETT, GREEN, WILLIAMS and
McCOLLUM, JJ.

No. 30 July Term 1889, Sup. Ct.; court below, No. 181 Sep-
tember Term 1887, Q. S.

On September 10, 1887, the grand jury returned as a true
bill an indictment charging James Johnson and Stephen M.
Elston, supervisors of Jackson township, with having neglected
and refused to open a certain public highway in accordance
with the order of the court, and as the same had been laid out
by viewers, approved and confirmed by the court. Issue.

At the trial on January 30, 1888, it was shown in substance
that on September 6, 1886, the Court of Quarter Sessions finally
confirmed the report of viewers laying out a public road from a
certain point in Lehman township to the public road in Hunts-
ville, in Jackson township, near the stone bridge in the public
road from Dallas to Harveyville. The portion of the road in
Jackson township, as laid out and reported by the viewers,

Charge of Court below.

crossed Toby's creek at a point about 50 or 60 feet from the stone bridge referred to, and joined the Dallas and Harveyville road at the further end of the bridge. In October, 1886, Chester Brown, one of the supervisors of Jackson township, began the opening of the road, under an order issued therefor, but, to avoid building a second bridge and a causeway, changed the route so as to run it across the bridge then existing. In June, 1887, the defendants, who were the official successors of Brown and his associate supervisor, took up the work of Brown, which was then incomplete, and proceeded to finish the opening of the road on the new location adopted by Brown, when they were served with an order to open according to the record of the road, and on their refusal this prosecution was commenced.

The defendants offered "to prove by the witness (Brown) on the stand that there was an amount of $400 indebtedness of the township."

Objected to.

By the court: Objection sustained; exception.[12]

The defendants also offered "to show that the slight variation testified to, of defendants' road from the original as laid out by the viewers, was made in the exercise of a wise discretion; that the present road is just as good as, and far less expensive than the one originally laid out."

Objected to.

By the court: Objection sustained; exception.[13]

The court charged the jury, in part, as follows:

Coming to the case before us, we say to you that it seems from the evidence, and is undisputed, that the supervisors of Jackson township, who were the immediate predecessors in office of these defendants, had for some reason seen fit to change the location of the road as confirmed by this court. Instead of conforming to the road or line of road reported by the viewers, adopted by the court and spread upon our records, they had seen proper to deviate from the line of this road some three rods, and had done a certain amount of work thereon.

[We say to you, gentlemen, as a matter of law, that these supervisors of the previous year had no legal right whatever to so alter the location of this road, and that they might have been indicted and punished for so doing. While it is true that

supervisors, in the exercise of a sound discretion may deviate slightly from a route laid out by viewers, so as to avoid rocks or obstacles,—while we are not prepared to say that such a course might not be adopted legally, we do say to you that a change of three rods is not covered by any such discretion. It was a plain, distinct violation of an order of this court, and as such, punishable under an indictment. It follows, of course, that these defendants, who were the successors of the supervisors referred to, have no legal right to adopt this changed route. They were bound to build this road in conformity with the report of the viewers and the order of court.] [1]   Did they know that they were on the wrong line or route? This question may become important to the jury in passing upon the guilt or innocence of these defendants.

The prosecutor in the case, R. W. Elston, testifies that on June 13, 1887, having procured copies of the court orders in this behalf, he gave notice of their contents to these defendants, by serving or trying to serve copies of these orders on each of them, and making the contents known to them, and the effects of the order. You recollect the testimony on that point. Stephen Elston, one of the defendants, testifies that he was not served with any such notice; that he declined to take a paper which was offered him by the prosecutor, or listen to its contents; but he admits on cross-examination that he knew he was not working on the line of the road as laid out. The other supervisor, Johnson, was served with the notice. [If these defendants knew, either from the notice served upon them by the prosecutor, or otherwise, that they were not working on the line of the road laid out and confirmed by the court, but on another line three rods distant, then they were failing to perform their duty, and failing in such a way as to make them indictable in a criminal court.] [2]   Did they have this knowledge, is a question of fact for the jury. Did they know or not that they were off the proper route of this road?

[If you believe that these defendants have transgressed the law, under these rules as laid down to you by the court, you will say they are guilty in manner and form as they stand indicted] [3] . . . . .

Defendants' counsel asks me to charge you upon certain points, which I will read and answer:

#### Charge of Court below.

1. There being no dispute that the road in question had been opened previous to the commencement of this prosecution, there can be no conviction in this case, and the verdict must be not guilty. If the defendants improperly opened the road in the wrong place, the remedy of the commonwealth would be upon an indictment charging such wrongful and improper opening of the road, and not in this proceeding, where the indictment charges a total neglect of the supervisors to open the road at all.

Answer: We do not believe that that point is well taken, and we decline to affirm it.[4]

2. If the jury believe that the defendants opened the road in dispute in the place where they did, under the honest belief that they had a right, acting under the discretion that the law gives them in the performance of their duty, to open the road in that place, the verdict must be not guilty.

Answer: We decline so to charge you, and as to the subject matter contained in the point we refer to our general charge.[5]

3. Supervisors are officers of the law having important duties to perform, and a large discretion in their performance; if these defendants opened the road in dispute in such a way as to do no injury to the public, and substantially to conform to the order of court, they cannot be convicted, although they may have varied the route of the road as originally laid out, to a small extent.

Answer: We say to you that we do not believe that the question raised by this point arises in this case, inasmuch as three rods is too great a deviation to be covered by the principle invoked. We therefore decline to affirm the point.[6]

4. If the jury believe that the defendants exercised a wise discretion in varying the route of the road to the extent they did, and that no injury to the public has accrued or will accrue, the verdict should be not guilty.

Answer: This point we decline to affirm.[7]

The jury returned a verdict that the defendants were guilty, with a recommendation to the mercy of the court. A rule for a new trial having been discharged, the court citing: Edge v. Commonwealth, 7 Pa. 275 ; Holden v. Cole, 1 Pa. 303 ; McMurtrie v. Stewart, 21 Pa. 322; Calder v. Chapman, 8 Pa. 522 ;

Opinion of the Court.

Clark v. Commonwealth, 33 Pa. 112 ; act of May 3, 1855, P. L. 422, the defendants were adjudged each to pay a fine of one dollar and one half the costs of prosecution. Thereupon the defendants took this appeal, assigning for error, inter alia :

   1–3. The parts of the charge embraced in [ ] [1 to 3]
   4–7. The answers to the defendants' points.[4 to 7]
   12, 13. The refusal of the defendants' offers.[12 13]

*Mr. Q. A. Gates*, for the appellants.

Counsel cited: McMurtrie v. Stewart, 21 Pa. 322 ; Furniss v. Furniss, 29 Pa. 15 ; Nescopeck Bridge, 120 Pa. 288, 294 ; Commonwealth v. Reiter, 78 Pa. 161 ; Schuylkill Co.'s App., 38 Pa. 459 ; Holden v. Cole, 1 Pa. 303 ; Clark v. Commonwealth, 33 Pa. 112 ; Morrow v. Commonwealth, 48 Pa. 305 ; Ross v. Malcom, 40 Pa. 284 ; Perry Tp. v. John, 79 Pa. 412.

*Mr. William S. McLean* (with him *Mr. Alfred Darte*, District Attorney), for the commonwealth.

OPINION, MR. JUSTICE GREEN :

We think this case was correctly tried by the learned court below. The road which was opened in Jackson township was no part of the road which was laid out in that township by the viewers. It did not extend to the terminal point of that end of the road, and it ran in a different direction from that portion of the road as laid out by the viewers. It is true that the supervisor of Jackson, of the previous year, Chester Brown, did commence the opening of the part of the road in Jackson, on the route as finally completed by the present defendants. But he testifies expressly that he did not finish it, and that it was in fact finished in 1887 by the defendants. It was not until June, 1887, that the completed road was opened and traveled in Jackson township.

This fact, about which there is no real dispute, clearly takes the case out of the doctrine established in Clark v. Commonwealth, 33 Pa. 112 ; Morrow v. Commonwealth, 48 Pa. 305 ; McMurtrie v. Stewart, 21 Pa. 322, and kindred cases. They all include the idea that the road, which cannot be changed even to put it upon its true location, is one that has been completely opened and used for public travel. That, of course, was

not the case here, nor can the defendants be excused upon the theory of a slight variation to avoid obstructions. There were no such facts here. Doubtless it was unnecessary to have two bridges in such close proximity as would result from building the new one required by the view, but that is a difficulty which could only be remedied by proceedings in the Quarter Sessions to vacate that portion of the road as laid out by the viewers. It would never do to permit supervisors to exercise such authority, and practically override the order of the court confirming a road as laid out by a report of viewers.

The offer to prove an indebtedness of four hundred dollars on the part of the township was properly rejected. It would not follow from the fact of such indebtedness that the township was unable to build the bridge. If it was intended to show such financial inability, the offer of proof should have been broader, and embraced facts necessary to that purpose. But as the township might have had assets sufficient for the payment of the debt, or taxable property enough to raise the amount necessary to build the bridge, the offer to prove the mere fact of the indebtedness was too narrow.

There is no merit in the fourth assignment. The road as laid out was not opened at all, and the opening of a wrong road is no defence, because it is not a compliance with the legal duty of the supervisors. In Commonwealth v. Reiter, 78 Pa. 161, we said: "That supervisors are liable to indictment for neglecting to open a public highway duly laid out in their respective townships is well settled: Graffins v. Commonwealth, 3 P. & W. 502; Edge v. Same, 7 Barr 275; Phillips v. Same, 8 Wr. 197." The assignments of error are rather numerous, but a careful examination of all of them discloses no error.

Judgment affirmed.