## Com. ex rel. Ballou v. Halifax Township Supervisors.

*Townships — Supervisors—Duties—Enforcement of performance—Jurisdiction—Public roads—Acts of April 6, 1802, and July 14, 1917.*

1. The duties and responsibilities of township supervisors are statutory.

2. Courts must look to the Act of April 6, 1802, 3 Sm. Laws, 512, 516, for an understanding of the provisions of the Township Code of July 14, 1917, P. L. 840.

3. The requirement of the Township Code of 1917, that all public roads or highways shall at all seasons be kept clear of all impediments to easy and convenient traveling at the expense of the township, means roads opened by order of the Court of Quarter Sessions or roads dedicated to the public and so recognized by the township supervisors and kept in repair by them.

4. The only remedy to enforce performance of the duties imposed by law upon township supervisors is indictment in the Quarter Sessions.

5. Want of jurisdiction may be taken advantage of at any stage of a proceeding. A court is bound to take notice of a question of jurisdiction, although no objection was made on the ground of want of it. Jurisdiction is a matter of law which a court must judicially notice.

Mandamus. C. P. Dauphin Co., June T., 1922, No. 849.

H. B. *Saussaman,* for plaintiff; *Beidleman & Hull,* for defendant.

WICKERSHAM, J., March 29, 1926.—Upon petition of the plaintiff, alleging the necessary jurisdictional facts and praying that a writ of mandamus issue to the Supervisors of Halifax Township, commanding them to repair the road mentioned in the petition and put the same in passable condition, this court issued an alternative writ of mandamus as therein prayed.

Com. ex rel. Ballou v. Halifax Township Supervisors.

The defendants filed their return, denying that the road was in impassable condition and alleging that said road is only a lane leading from the Borough of Halifax to the farms of the plaintiff, Clara Powley and C. F. Ballou, having its one terminus in Halifax Borough and the other on the farm of the plaintiff, and that the only persons who travel the road are those who have immediate business with the Ballou or Powley farms. They further deny that the road is a public road.

This case came on to be heard before the court without a jury, whereupon witnesses testified on the part of the plaintiff. The defendants did not offer any testimony, but preferred to rest their case upon the testimony offered by the plaintiff, from which we find the following

*Facts.*

1. The plaintiff is the owner of land on both sides of the road with the exception of the reservation of the Pennsylvania Railroad Company.

2. The road begins at the borough line of the Borough of Halifax and extends to the farm of C. F. Ballou, and is a mile in length. At some places it is just wide enough for an automobile or a wagon to travel; at others it is wider, and some places it is wide enough for vehicles to pass.

3. This road is the only means of ingress and egress to the three farms, through which it passes, its one terminus being at the farm of C. F. Ballou.

4. The condition of the road depends upon weather conditions; sometimes it is very bad. At the time of the hearing—during dry times—it is not so bad. The plaintiff has done some work on the road.

5. At one point on the road the Pennsylvania Railroad Company has placed three pipes underneath its tracks, which discharge water across the road, which, at that place, is only eight feet wide. When there is any water there of any consequence, the road is impassable. With this exception, the condition of the road is the same as found in any of the dirt roads of the township.

6. The right of way of the Pennsylvania Railroad Company passes through the middle of plaintiff's land.

7. The defendants and their predecessors have always denied their responsibility to keep this road in repair, contending that it is not a township road.

8. Prior to 1855 there was a public road from Harrisburg to Sunbury, following the course of the Susquehanna River. This road was appropriated by the Pennsylvania Canal and a new road laid out between Halifax and Clark's Ferry, part of which followed the towpath of the canal. On or about 1855 the Northern Central Railroad Company built its tracks upon the road which had been supplied by the Pennsylvania Canal Company, and thereafter the said railroad company laid out the road or lane now in controversy as a means of ingress and egress to the three farms above mentioned.

9. Repairs to the road in question were made only by the railroad company and by the farmers living on these three farms.

10. The road in question has never been laid out as a township road, nor has it ever been recognized as such by the Supervisors of Halifax Township.

*Discussion.*

We think the gist of this case appears in the testimony of Mr. Straw, a witness for the plaintiff (N. T., page 13), who, in answer to the question: "Q. The supervisors have not done any work on that road?" replied: "A. No, they had not business on the road; it never was a township public road." And in the testimony of plaintiff's witness Loudermilch (N. T., page 18), who testified: "Q. Do you know whether or not the Pennsylvania Railroad Company or the old Northern Central at that time kept this road in repair?

A. They did some work on it while I lived there. Q. Did you know that always the supervisors denied their liability to maintain this road on the ground that it was not a township road? A. We never asked them when we lived there. Q. During the period that you lived there, who kept up the road? A. The railroad company. Q. The railroad company or the persons living there used to keep up the road and never made any request upon the supervisors? A. They did not, that I remember of."

Mr. Loudermilch testified that he lived on the farm where old Mr. Ballou lives for forty-one years.

The duties and responsibilities of supervisors of townships are statutory. Section 9 of the Act of April 6, 1802, 3 Sm. Laws, 516, provides: "That the supervisors of the public roads or highways of the several townships within this Commonwealth shall have power, and they are hereby enjoined and required, to hire and employ a sufficient number of hands to make, open and repair all the public roads within their respective townships which by the Court of Quarter Sessions of the proper county have been or hereafter shall be declared public roads or highways, and to purchase wood and all other materials necessary for that purpose; to oversee and direct the laborers, and to take care that the said roads be forthwith effectually opened, cleared and amended."

Section 6 of the Act of June 13, 1836, P. L. 556, provides: "Public roads or highways laid out, approved and entered on record as aforesaid shall, as soon as may be practical, be effectually opened and constantly kept in repair, and all public roads or highways made or to be made shall at all seasons be kept clear of all impediments to easy and convenient passage and traveling at the expense of the respective townships as the law shall direct."

Practically the same wording will be found in section 9 of the Act of April 28, 1899, P. L. 104, relating to townships of the first class, and section 21 of this act provides that: "Townships of the second class shall continue to be governed as provided by the laws in force at the time of this act relating to townships until the same be changed by legislative enactment."

The Township Code of 1917, § 660, provides: "Public roads or highways laid out by lawful authority in townships of the first and second class shall, as soon as may be practicable, be effectually opened and constantly kept in repair. All public roads or highways shall at all seasons be kept clear of all impediments to easy and convenient traveling at the expense of the township."

It will thus be observed that there is little change in the law relating to the duty of township supervisors in the past one hundred and twenty-five years. As stated in the Act of 1802—and we must look to this act to understand the provisions in the Township Code—they are required to open and repair all the public roads within their respective townships which by the Court of Quarter Sessions of the proper county have been or hereafter shall be declared public roads or highways. With this in mind, we can well understand the meaning of the words contained in the Township Code, "all public roads or highways shall at all seasons be kept clear of all impediments to easy and convenient traveling at the expense of the township." This means, we think, roads opened by order of the Court of Quarter Sessions, or roads dedicated to the public and so recognized by the township supervisors and kept in repair by the same (Weida v. Hanover Township, 30 Pa. Superior Ct. 424), or to highways by prescription (Lower Windsor Township v. Gemmill, 16 W. N. C. 265), where said highways have been kept in repair by the township and have been actually used by the public for more than twenty-one years. The right to determine what reasonable repairs the public convenience demands rests

in the reasonable discretion of the authorities. No formal dedication of a street to public use is necessary. If it was opened to the public by a former owner, and used by the public for many years, and taken in charge by the authorities when deemed necessary, it is a public highway: Raymond v. Brandt et al., 21 Lanc. Law Rev. 401.

Having appropriated the road used by the public prior to 1855, it became the duty of the railroad company (Act of Feb. 19, 1849, P. L. 79) to reconstruct the public road forthwith on taking the old road, and it was subject to indictment for omitting and neglecting so to do: Pittsburgh, Virginia & Charleston R. R. Co. v. Com., 101 Pa. 192; Aston Township v. McClure, 102 Pa. 322, 325. This duty, under the evidence, the railroad undertook to perform by building the narrow road or lane now in question, and it has also made repairs upon said road from time to time. It did not, however, construct a public road of the minimum width of thirty-three feet to take the place of the road appropriated, but, according to the evidence, only constructed the narrow lane which has been used for more than thirty years by the owners of the three farms through which the road passes and by those having business with said abutting owners. There is no evidence that the road has been used generally by the public except as herein indicated. We fail to reach the conclusion, therefore, that the lane so laid out for the benefit of the three farms through which it passes, and which has been kept in repair from time to time by the railroad company and by the owners of the farms through which the road passes, and which the Supervisors of Halifax Township have always refused to recognize as a public township road which they were bound to repair, is such in fact.

Counsel for plaintiff relies, in support of his contention that it is the duty of the Supervisors of Halifax Township to repair the road or lane in question, upon the decision of Judge Pearson in In the Matter of the Road from Willson's Farm to Kunkel's and Ulrich's Farms, 1 Pearson, 170, and followed with approval by Judge McCarrell in In re Washington Township Road, 36 Pa. C. C. Reps. 577-579. In the first case referred to it was held: "A public road cannot be laid out on top of another public road, even though the latter be such only by prescription." This was a proceeding to open a road "from the farm of Willson's, on the Middletown Turnpike, to Michael Ulrich's and Benjamin Kunkel's." The proceedings were held to be illegal and irregular because they did not mention the township or any further locality. Judge Pearson goes on to say (page 171): "The greatest, and what is probably the incurable, defect is that the petition asks for the laying out of a road on one used and occupied by the traveling public for nearly fifty years. If such is the road to be traversed by the viewers, we have no authority to lay out one on top of it. It is to all legal intents as much a public road as it ever can be. If the road thus used is established by prescription, it is as good as if laid out by an order. . . ."

In In re Washington Township Road, 36 Pa. C. C. Reps. it was held: "Viewers may adopt an existing road for a portion of the route of a new road which they are appointed to lay out." It appeared that at the time of the presentation of the petition there was a road actually opened and used by the public for church, school and rural mail purposes between the terminal points named in the petition, which fact was not stated in the petition; the whole proceeding was held irregular and set aside, at the cost of the petitioners.

In both cases relied upon by counsel for the plaintiff this court was passing upon a proceeding to open a new road, and the petitions being defective, the

proceedings were declared irregular and set aside. We do not find anything in either of these authorities which rules the instant case on the facts as they appear by the testimony and as we have found them to be.

We have decided this case upon its merits because it was so tried, and the question of jurisdiction was not raised by either of the parties, and for the further reason that, in the event of an appeal, the matter might be intelligently reviewed by the appellate court. We think, however, the question of jurisdiction is involved. Want of jurisdiction may be taken advantage of at any stage of the proceeding. A court is bound to take notice of a question of jurisdiction, although no objection was made on the ground of want of it. Jurisdiction is a matter of law which the court must judicially notice: Smith *v.* Becht, 7 D. & C. 14, 28 Dauphin Co. R. 55; Stearly's Appeal, 3 Grant, 270; City of Lansing *v.* Chicago, M. & St. P. Ry. Co. (Supreme Court of Iowa), 52 N. W. Repr. 195; Berrett *v.* Oliver et al. (Supreme Court of Maryland), 7 Gill. & J. 191-207. We think the only remedy which the plaintiff can invoke to enforce performance of the legal duties imposed upon the Supervisors of Halifax Township is by indictment. His remedy is in the Court of Quarter Sessions and not in the Court of Common Pleas.

In Edge *v.* The Com., 7 Pa. 275, it was held: "Supervisors of public highways are punishable by indictment for neglecting or refusing to open or repair a public highway. . . ." We quote from the opinion of Mr. Justice Coulter (see page 276) : "Not opening a highway, or refusing or neglecting to keep it in repair, is an injury to the public, and is indictable as a public or common nuisance: 3 P. & W. Reps. 502. The supervisor is enjoined by statute to open and repair roads; and it is essential to the convenience of the public that the remedy to force compliance on the part of the officers shall be emphatic and at the instance of the public authorities of the state:" Com. *v.* Reiter, 78 Pa. 161, 165; Graffins *v.* Com., 3 P. & W. 502; Phillips *v.* Com., 44 Pa. 197; Com. *v.* Johnson, 134 Pa. 635, 640; Roaring Brook Township Road, 140 Pa. 632, 639; Com. *v.* New Bethlehem Borough, 15 Pa. Superior Ct. 158-163; Oakland Township *v.* Martin, 104 Pa. 303.

In Com. *v.* Holland, 153 Pa. 233, it was held: "The Court of Common Pleas has no jurisdiction to enforce by mandamus an order of the Court of Quarter Sessions directed to supervisors of a township to open a public road. The Court of Quarter Sessions has ample power to enforce its own order." In writing the opinion of the Supreme Court, Mr. Chief Justice Paxson says (see page 235) : "The objection we have to this proceeding is that the Court of Common Pleas has nothing to do with the opening of public roads; the jurisdiction belongs to the Court of Quarter Sessions, and it is exclusive. The proceeding is practically an attempt to enforce in the Court of Common Pleas an order made by the Court of Quarter Sessions. As a general rule, every court of record possesses the inherent power to enforce its own orders and decrees. The Court of Quarter Sessions possesses ample power in this respect."

It is significant that the legislative mandate with regard to the duties of township supervisors, who are enjoined and required to open all the public roads within their respective townships which have been laid out by lawful authority, will be found in the same section, with the further mandate requiring them at all seasons to keep the public roads and highways clear of all impediments to easy and convenient travel. As we have before stated, we conclude that the remedy in either case to enforce the performance of the duty imposed upon them by law is in the Court of Quarter Sessions by indictment, which the plaintiff should have pursued in this case.

Com. ex rel. Ballou v. Halifax Township Supervisors.

In so deciding, we are not unmindful of section 240 of the Township Code of 1917, which provides that "any township supervisor . . . employed to work on the roads . . . of any township of the second class who shall violate any of the provisions of this act, other than those for the violation of which specific penalties are provided, or who shall fail, neglect or refuse to carry out the provisions of this act, shall, upon conviction before a justice of the peace, be sentenced to pay a fine of not more than $50. . . . All such fines shall be paid to the township treasurer for the use of the public fund."

Judge Prather, of the Court of Quarter Sessions of Crawford County, in Com. v. Adsit et al., 30 Dist. R. 760, decided that this remedy was exclusive and that a failure of the supervisors properly to construct and maintain highways was no longer the subject of indictment; and Judge Baird, of the Court of Quarter Sessions of Clinton County, in Com. v. Johnson et al., 5 D. & C. 769, reached the same conclusion.

Judge Bell, of the Court of Quarter Sessions of Clearfield County, in Com. v. Neff et al., 1 D. & C. 657, decided that supervisors may be indicted for neglect or refusal to keep in repair a public road, and that the remedy by indictment has not been repealed or superseded by section 240 of the Township Code of July 14, 1917, P. L. 840. Judge Smith, of the Court of Quarter Sessions of Susquehanna County, in Com. v. Forest Lake Township Supervisors, 1 D. & C. 99, reached the same conclusion. He further decided that the remedy given by the Township Code is not exclusive. Judge Wanner, of the Court of Quarter Sessions of York County, in Road of East Manchester Township, No. 2, 35 Lanc. Law Rev. 245, decided, on Feb. 25, 1918, that an indictment of supervisors for failure to perform their duty is the proper remedy.

After a careful examination of the cases last cited, we think the weight of the authority is in favor of the conclusion reached by Judges Bell, Smith and Wanner; but, in any event, the remedy of this plaintiff was either by indictment or by proceeding under section 240 of the Township Code of 1917.

For the reasons above expressed, we are of the opinion that, deciding this case upon its merits, the plaintiff has not established his contention that the lane used by the plaintiff and other residents through whose farms the lane passes is a public highway of Halifax Township. We also are of the opinion that we have no jurisdiction to entertain this action. The writ of mandamus issued by us in the alternative form is, therefore, dismissed.

From George R. Barnett, Harrisburg, Pa.