## SWARTZ *v.* SWARTZ.

A. and B., owners of adjoining tracts of land, under a parol agreement, erected a mill and dam at their joint expense, the scite of which was on the land of A., and the water-power partly on that of B. B.'s assignees sold his tract as a saw-mill, with its appurte-nances. *Held*, 1. That the purchaser might recover an undivided moiety of so much of A.'s land as was used for the purposes of the mill. 2. That it was immaterial that A. at the time of the agreement had but an estate in remainder, subsequently vesting in possession. 3. That if the contract between A. and B. was for a term of years only, yet if the purchaser from B. continued in possession after the determination of the term, and jointly with A. erected a new mill on the old scite, to propel which, the power on A.'s land was necessary, A. was estopped denying the right of such pur-chaser to a moiety of the mill scite and of his *land* covered by the water which con-stituted the mill power.

In ejectment, by the purchaser from B. against A.; evidence that the lot purchased was worth the amount paid, independent of the right to the water-power, is inadmissible, for the purpose of showing that the mill, &c., was not purchased. So of evidence of the present condition of the new mill, erected twelve years before the trial.

By a conveyance of a saw-mill with its appurtenances, the right to land covered by the water-power will pass, though not expressly described in the deed.

In error from the Common Pleas of Bucks county.

*Dec.* 29, 30. Ejectment for a moiety of a hundred and seventeen perches of land. In 1808, Michael Swartz devised the premises to his wife for life, remainder to Thomas Swartz, the defendant below, in fee. In 1813, Michael G. Weisel, jun., purchased from Michael Weisel three acres and three perches of land adjoining this land, to-gether with the privilege of damming a creek so far as the same passes through the premises of Michael Weisel, and, also, the privilege of building and repairing a dam across said creek, so far as may be

4   353
133   198

4      353
20 SC ²281

4      353
d 27 SC ³624

4      353
31 SC ¹502

4      353
e216   ¹289

beneficial to mill or mills intended to be erected on or near adjoin-
ing the thereby granted premises.    In 1821, he made a general as-
signment for the benefit of his creditors, and his assignees, in the
same year, advertised this tract as a house and lot, and the right in
a saw-mill, and conveyed the land, with its appurtenances, to
Nicholas Swartz, the plaintiff below, "being the same property
which Michael Weisel conveyed to Michael G. Weisel, jun."    Mi-
chael G. Weisel was examined by plaintiff, and stated, there was
a parol agreement for the joint erection of a new mill, he furnishing
the power, and Thomas the scite for the mill and mill yard, the pro-
fits to be equally divided, and that there was no limitation as to time,
when the agreement was made.

Plaintiff then proved that in 1822 he went into possession of the
three acre lot, and a mill thereon; that there was a mill erected pre-
vious to Weisel's assignment, of which Thomas Swartz and Weisel
had possession; and that the water runs on both lots when the dam
is full; and that no notice forbidding the sale of the saw-mill was
given when the assignees sold.

He also proved, that a mill was erected by Weisel and Thomas
Swartz, on the lot in dispute, in 1811 or 1813, and a dam which
stood principally on Weisel's lot, which mill could not be driven
without the dam as it now stands; and that another mill was erected
in 1834 by plaintiff and defendant at their joint expense; this was
an old mill purchased and brought from a distance by both of them,
to its present location; and that plaintiff had been in possession
until 1844, when he was ousted by defendant with violence.    He
also proved admissions by the defendant, that the mill work and re-
pairs were done in partnership.    He also gave in evidence a joint
application to the canal commissioners for damages, for the interrup-
tion to their race for one year, whilst the public works were being
erected on the premises, together with their joint receipt for the
amount awarded.

The defendant having shown his title by devise, proved that Mi-
chael Swartz's widow died in 1834, at which time his remainder
vested in possession.    That the Commonwealth, in constructing the
public works, altered the position of the dam, so that it now stands
on land of N. Swartz and another.

The second and third errors assigned were, in the rejection of
evidence, 1. That the lot purchased by N. Swartz, from the as-
signees, was worth the sum paid, independent of this appurtenance;
and 2. The character of the roof of the present mill.

He gave evidence that the one-half of the profits of the mill

exceeded the expenses of its erection; also, of Weisel's admission at the time of the building of the dam, that they were only building on sufferance, and that he had only a right for twenty years.

Another witness stated that Weisel, in the year the mill was commenced, said, in answer to his inquiry : that they had no article, but would never disagree; but said nothing about limited time, &c. ; that when the mill was worn out, they would be rich enough or broke up.

His honour, KRAUSE, P. J., instructed the jury, "that if they believe that Weisel, in 1813, had the scite for the dam, and what was selected as the scite for the mill and the creek stood on land adjoining, of which Thomas Swartz had the remainder in fee, thus making both lots necessary to locate a mill power; that these parties then united their advantages for their mutual benefit and profit, took a common possession and built the saw-mill at their joint cost, these facts prove a contract between the parties for an exchange of land which is binding in law; and the sale by Weisel's assignees to the plaintiff, if such was made, in 1821, of Weisel's three acres and three perches with the appurtenances, makes him the owner of an undivided half part of the hundred and seventeen perches, for the purposes stated of said water right and saw-mill, and the plaintiff would be entitled to recover under the authority of Hall *v.* Benner, 1 Penna. Rep. 402. For a parol contract of the kind, though it must be such as may be executed on comprehensible terms, may be proved by circumstances and the acts of the parties; and an exchange of such advantages to constitute a water-power and mill is a valuable consideration, and possession a sufficient past performance to sustain a parol sale of land. Here, however, if the evidence is believed, there was not only possession taken, but an expenditure of money superadded; and as to Thomas Swartz's title, a grant from his mother—she living in sight—would be presumed if the justice of the case required it. At any rate, his acquiring the title in full afterwards, would enure to the benefit of the plaintiff as purchaser of Weisel's interest. The jury however will be careful on this branch of the case, to take into view the testimony, that Weisel said there were no articles between himself and Thomas ; that they would build and run the mill together, and when it was worn out, they would be rich enough or broke up; that they built on sufferance, and that they had a right only for twenty years. For to enable the plaintiff to recover, he must prove a contract, otherwise there is none for him to execute, and that must be for a period of more than twenty years, otherwise his right of possession had expired when he was ousted.

" But the plaintiff also relies on another ground, as to which no such declarations as are proved on the part of Weisel are proved in respect of the plaintiff. If the evidence is believed, Thomas became owner of the full fee in 1834, of the hundred and seventeen perches, the life-tenant being dead. The plaintiff was owner of the adjoining lot of three acres and three perches. The Commonwealth had reconstructed the dam covering both with water when full. They bought the frame together—used the mill together—built together—paid repairs of the property—the property so situated that neither had a mill property ; they united and made one by the expenditure of mutual labour and money, and used it as a common property till 1844, when the plaintiff was ousted. Both had possession and use of the premises. If these are facts in the case, they prove a contract supported by a valuable consideration and accompanied by possession, sufficient in law to make the plaintiff owner in common with the defendant, and entitle him to be restored to possession. 3 Watts & Serg. 56 ; 8 Watts & Serg. 68 ; 6 Watts, 342. According to the authority last cited, if the plaintiff built the mill and dam, and Thomas gave him aid and encouragement to expend his money to do so, equity would give him title even without an express contract, and the law is the same when the parties built in common for their mutual advantage on one another's land as is alleged in this case. The plaintiff, however, insists that the circumstances prove a contract, an expenditure of money and possession in pursuance of it. The jury will take them all into consideration, as shown in the testimony from 1813 to 1844, and under the law as stated make up their verdict."

In answer to defendant's points, the court instructed the jury, that this was not the case of a parol contract, on which there could be no recovery if the profits exceeded the value of the permanent expenditures.

The other points were answered in the general charge ; they were, that during the life-estate of the mother, a parol contract by the remainder-man was void ; that such a contract was not proved, as Chancery would enforce, and that possession must have been taken in pursuance of the contract. The court also said, that if Weisel acquired but an easement, this action would not lie.

The rejection of the evidence, and the answer to the points, constituted the first four errors assigned. The seventh, eighth, ninth, eleventh and twelfth, were to particular passages of the charge: that the conduct of the parties in uniting in erecting the mill, proved a contract for the exchange of land ; that the sale by Weisel's assignees

passed the interest in these premises; that the contract could be proved by circumstances, &c. ; the charge as to the title of Swartz's widow and estoppel of Thomas ; that the facts, if proved, showed a contract, and the charge as to the acts subsequent to 1834, and their consequences.

*Chapman,* for plaintiff in error.—The evidence excluded was material in the issue trying, which was, whether the plaintiff had become a purchaser by improvements under a parol contract. The court were wrong in their charge as to the right of the plaintiff. It must be shown, that the improvements were made after the parol contract. Wack *v.* Sorber, 2 Whart. 387; Eckert *v.* Eckert, 3 Penna. Rep. 332. There was no contract after 1834, and the subsequent erection of the mill was not in pursuance of the original contract. Pugh *v.* Good, 3 Watts & Serg. 56. Nor were the terms of the contract so certain as the law requires. Woods *v.* Farmare, 10 Watts, 195 ; Jones *v.* Peterman, 3 Serg. & Rawle, 543. The improvements were compensated by the profits, and in such case, they are not a consideration. McKee *v.* Phillips, 9 Watts, 85.

*Ross,* contrà.—The jury could not be permitted to infer from the price, that we were not purchasers. Hoover *v.* Gonzalus, 11 Serg. & Rawle, 314. The character of the building at the trial, twelve years after its erection, was not evidence to contradict the proof of expenditure at that time. The testimony of Weisel showed a positive agreement for a union of the separate interests into a joint concern; possession taken and expenditures made on the faith of the contract, so that every requisite of Pugh *v.* Good is satisfied. The occupation for thirty years under the contract was a sufficient designation of the extent of our right. The outstanding life-estate is perfectly immaterial. Thomas was estopped by his previous acts when his remainder vested. Brown *v.* McCormick, 6 Watts, 60. The charge was perfectly correct as to the effect of the acts of the parties in 1834, for, either permission to expend under the supposition of title, or an encouragement to expend without title, estops the party. Carr *v.* Wallace, 7 Watts, 394, and cases cited by the court.

*Jan.* 11. GIBSON, C. J.—These exceptions to evidence are so nice, that it is unnecessary to say more in regard to them, than that they are not sustained. Neither is it necessary to examine, in detail, exceptions to dislocated parts of the charge. It would not be more troublesome than unprofitable to follow out to their results these mincing assignments of error, which, catching at particular expressions, lead to no sound conclusion as to the accuracy of the whole. The

proper inquiry is, whether the ruling principle of the cause has been correctly stated and applied to the evidence. To determine whether it has been so stated and applied in this instance, it is necessary to recur to the features of the case. The original parties to the agreement which is the subject of adjudication, were proprietors of contiguous pieces of land, through which runs a stream of water with just fall enough in its course through both, to afford sufficient power for a saw-mill. The proprietors of these two pieces agreed to erect, in partnership, such a mill on the lower one; the one party finding the scite, the other the water-power, and both contributing equally to the expense. The mill was erected on these terms, and worked for some time on joint account; but the plaintiff below, who purchased the land owned by the proprietor of the water-power, has been held out of a participation in the business and profits, by the proprietor of the scite; and it has been urged on his part, that as the predecessor of the plaintiff below was in possession under a previous arrangement, which had expired by its own limitation, this new parol agreement is void by the statute of frauds.

One fallacy of the argument, is the assumption of a right to treat the agreement as a parol conveyance of an interest or estate in the land, instead of a *license* to use it in a particular way without disturbing the title of the owner as a trustee. That such a license is binding, without part execution by delivery of possession, is shown by Rerick *v.* Kern, 14 Serg. & Rawle, 267, on which a parol license to divert water from its ancient course for the use of a saw-mill, was held to be irrevocable after an expenditure of labour or money on the basis of it. The principle of the case is, that the revocation would be a fraud; and that to prevent it, a chancellor will turn the owner of the soil into a trustee *ex malefecio*. It is in substance the same which postpones the title of one who is studiously silent as to the existence of it, in the presence of a purchaser from a third person; or of one who suffers another to build ignorantly on his ground without informing him of his mistake. In the case of Jack *v.* Blair, (not reported,) a co-tenant of a lot in the town of Armstrong was allowed to recover his interest from another who had built an expensive house on it without having had formal notice to desist, only because the defendant had been perfectly aware of the plaintiff's title. So far was the principle carried in Robinson *v.* Justice, 2 Penna. Rep. 19, that a title, of whose existence the owner of it was ignorant at the time, was postponed, because his positive representations had induced the vendee to purchase. In the case before us, there was neither want of notice nor want of knowledge; but the plain-

tiff's predecessor in the ownership of the title had been induced by the defendant to expend his money on the faith of the arrangement; and the attempt of the latter to disavow it, is an attempt to commit such a fraud as would induce a chancellor to declare him a trustee, even were the creation of a parol declaration of trust positively prohibited. But that it is not, was ruled in German v. Gabbald, 3 Binn. 302; Wallace v. Duffield, 2 Serg. & Rawle, 521; Peebles v. Reading, 8 Serg. & Rawle, 492; Slaymaker v. St. John, 5 Watts, 27, and particularly Martin v. McCord, Ibid. 493, in which it was held, that the gift of a lot for a school-house to be erected by contribution, created a trust for the purpose of the contributors. The truth is, the part of the English statute by which such a trust is prohibited, has not been enacted here. On either ground, therefore, the case is with the defendant in error.

But his title has been contested, on the ground that the interest of his predecessor in the saw-mill did not pass to him, as an appurtenance, by the sale of the contiguous land. Though the rule admits of exceptions, it is generally true, that land cannot be appurtenant to land; but that a license or privilege may, was ruled in Pickering v. Stapler, 5 Serg. & Rawle, 107, in which a water-right was allowed to pass, without the word privileges, as appurtenant to a saw-mill. The privilege in this case, as well as in that, was enjoyed in connection with the land which was the subject of the conveyance—it would have been useless separated from it—and it is not to be doubted, that it passed by the word appurtenances.

We see nothing in the case to forbid the plaintiff's recovery. His ejectment is for a hundred and seventeen perches of land; but as he is entitled to recover his interest in the saw-mill and the ground used along with it, he may take possession, under his execution, at his peril, to the extent of his title. Judgment affirmed.