187   145
30 SC ¹595
187   145
e216   ²291

# The Lehigh Coal Company, Appellant, *v.* The Wilkes-Barre and Eastern Railroad Company.

*Mines and mining—Culm—Personal property.*

Culm mined from its original place, and piled on the ground, is personal property.

*Eminent domain—Taking of culm—Measure of damages.*

Where a culm bank is taken by a railroad company under the right of eminent domain, the owner is entitled to recover the market value of the coal in the bank at the breaker, at the time the taking occurred, less the estimated cost of removing, cleaning, screening and preparing for market. In estimating the market value the advantage of getting a present lump sum, instead of instalments from time to time by sales of the coal, and also the just allowance to be made for wear and tear of machinery, interest on capital invested, etc., are proper subjects for consideration.

Where property is taken under the right of eminent domain the owner is entitled to recover what the property of which he has been deprived would have produced to him, not what it may be worth to the person taking it.

Argued April 11, 1898. Appeal, No. 430, Jan. T., 1897, by plaintiff, from judgment of C. P. Luzerne Co., Jan. T., 1893, No. 50, on trial by court without a jury. Before STERRETT, C. J., GREEN, MITCHELL, DEAN and FELL, JJ. Reversed.

Appeal from report of viewers.

The case was tried by the court without a jury before BENNETT, J., under the Act of April 22, 1874, P. L. 109.

At the trial it appeared that the defendant took for railroad purposes portions of two culm banks.

When W. A. Lathrop, a witness for plaintiff, was on the stand he was asked on direct examination:

" Q. Suppose that fill had been borrowed from some place in the vicinity there close by, how much would it have been worth to the defendant company to have borrowed it somewhere else, per cubic yard ? "

Objected to by defendant.

The Court: I cannot see how that is testimony. I do not think either side would be bound by what it would have cost

to have gone some other place. We sustain the objection. Plaintiff excepts and bill sealed. [7]

The court found as to the measure of damages in an opinion in part as follows:

8. [A further consideration of this subject convinces us that while as we have already found, the plaintiff is entitled to compensation for the value of the coal in question, considered as such, as an element of damages in the cause, and for that purpose was entitled to show, as nearly as possible under the circumstances, the quantity and quality of such coal and the fair value thereof to itself at the time of the taking, yet, that the value as indicated by the method of showing it adopted by the plaintiff's witnesses, is speculative, contingent and fanciful; that the plaintiff is not entitled to damages upon that basis, and that the testimony in question, so far as relates to the valuation of the coal, is incompetent and should be disregarded.] [2]

It may be remarked that, in effect, this evidence assumes, (*a*), that this coal, amounting to a given number of tons, was all screened, cleaned and prepared for sale at the breaker in December, 1892, whereas it was still in place in the banks, and its exact quantity could not then be determined; (*b*), that the whole quantity thus assumed to have been prepared could have been sold at the breaker at going rates in December, 1892, for the daily or monthly output of these less salable sizes, whereas the preparation of all this coal was then impossible and the prices were fluctuating; (*c*), that the cost of production would have been a given amount per ton, although no coal from these banks had been thus prepared at that place, and the requisite machinery for that purpose did not there exist; (*d*), that the whole amount of the price for this coal would have been presently receivable in 1892, whereas at best it would only have been received in monthly instalments, according to production, during a term of years; and finally, it involves, as the then present value of the coal, (*e*), the assumed profits of combined capital, consisting of coal in place, money and competent supervision, and makes no allowance for the risks and losses incident to business enterprise. We know of no authority justifying this basis of compensation or method of estimating damages in cases of the taking of property under the right of eminent domain,

and that there are none we deem it sufficient to refer, without further comment, to the case of Becker v. Railroad Co., 177 Pa. 252, and the principles and authorities there enunciated and cited.

We do not regard as in point the cases of Coleman's Appeal, 62 Pa. 279, Ege v. Kille, 84 Pa. 340, Coal Co. v. Rogers, 108 Pa. 147, and McGowan v. Bailey & Co., 179 Pa. 470, which hold that under particular circumstances such as existed in those cases,—neither of them being a taking under the right of eminent domain,—the value of ore or coal in place may be taken to be its value at the pit's mouth or in the market, as the case may be, less the cost of putting it there. Each of those cases recognizes the true rule to be the value of the mineral in place, not complicated with the question of the cost of production, wherever the former can be shown, without reference to the latter; and as pointed out in Coleman's Appeal, the method there allowed of showing value in place results in producing too great a value, in not making a reasonable deduction from the price of the mineral mined or marketed, for the profits of capital and the value of personal skill and superintendence, as well as cost of labor and machinery, where such capital, skill and superintendence are employed.  See also, Fulmer's Appeal, 128 Pa. 24.  But aside from the difference between the nature of those actions and the one at hand, the latter is to be distinguished in a marked degree from the former. There the taking was from day to day, the mineral was actually marketed and the exact cost of production, as well as the market prices produced, was definitely known and ascertainable, while here the taking was all at one time, and of the coal in its then condition; it was neither screened nor marketed, nor will it ever be, nor will the exact amount of coal ever become known.  It is therefore not to be considered as screened coal worth a certain price, as such, for the purpose of ascertaining its value unscreened.  It is to be taken just as it was and as it will remain.

Finally, the fact that no sales of culm banks for a fixed consideration, not depending on the quantity of coal to be produced, had been made, and the absence of a general selling price, do not prevent the fixing of a price.  In the case of the taking of land, the market value may be shown from the opinions of men

of experience and judgment who are acquainted with the property, although no sales have been made anywhere in that locality: Curtin v. Railroad Co., 135 Pa. 20. So here, evidence of men of experience in the coal business, having knowledge of culm banks and of the one in question, is competent to establish the value of this coal. One of the witnesses for the defense, Mr. W. F. Dodge, having this knowledge, in part from personal examination of these banks, and in part from hearing the evidence of the tests, did testify as to the value of this coal, recognizing the principle that its value was to be determined, not by the amount of profits that might have been made out of it by screening the coal, but upon the basis of what it was fairly worth for coal purposes, taking into consideration the facts, that it would require capital and labor to prepare the coal; that there would be changes in the market value from time to time, and that the investment of capital and the conduct of the business would be accompanied with more or less risk in connection with the prospects of a successful enterprise. Although his testimony was predicated of the correctness of the estimates as to quantity and quality given in evidence in behalf of the plaintiff, it is equally worthy of consideration, and competent as to a lesser quantity of coal found to have existed, making due allowance for that fact.

Judgment for plaintiff for $3,780. Plaintiff appealed.

*Errors assigned* among others were (2) portion of opinion as above; (7) ruling on evidence, quoting the bill of exceptions.

*H. W. Palmer*, and *F. W. Wheaton*, of *Wheaton, Darling & Woodward*, for appellant.—The measure of damage is the market value of the coal, less the cost of preparing it: Coleman's App., 62 Pa. 279; Graham v. Pittsburgh, etc., R. R. Co., 145 Pa. 504; Ege v. Kille, 84 Pa. 340; Coal Co. v. Rogers, 108 Pa. 147; R. R. Co. v. Butts, 36 Am. & Eng. R. R. Cases, 673; Montgomery County v. Bridge Co., 110 Pa. 54.

*J. T. Lenahan* and *S. J. Strauss*, with them *W. P. Ryman*, for appellee.—The court below did not err in its finding and its method of finding the damages awarded to the appellant, i. e., by refusing to allow speculative damages: Becker v. R. R., 177

Pa. 258; Schuylkill Nav. Co. v. Thoburn, 7 S. & R. 421; R. R. v. Balthaser, 119 Pa. 472; Searle v. R. R., 33 Pa. 57.

The market value of a thing taken fixes the measure of damage; it is not fixed by price obtained in particular sales: R. R. v. Patterson, 107 Pa. 461; Ry. v. Vance, 115 Pa. 325; Curtin v. R. R., 135 Pa. 20.

OPINION BY MR. JUSTICE MITCHELL, July 21, 1898:

The only substantial controversy is upon the manner in which the damages to plaintiff by the occupation of its culm bank shall be measured. The culm was personal property. It had been mined from its original place and, though it rested upon the land, it was as completely severed as a kiln of bricks in a brick yard, or a pile of pig iron in a foundry. The plaintiff was entitled to compensation for its value, and the open question is how that value shall be ascertained.

The learned judge below stated the rights of plaintiff very clearly and accurately in the following language: "This material (the coal) had been mined and placed upon the surface by the plaintiff, and was the personal property of the latter, although mixed with the dirt and slate. The defendant took it directly and occupied it for a roadbed, and entirely deprived the plaintiff of its property therein. It was as much a taking, for the purposes of a roadbed, of coal actually mined, as if there had been no dirt or slate mixed with it; and as the whole material taken was chiefly valuable for the coal of which it was in part constituted, we can see no reason why the plaintiff should not, under the statute, be compensated for the coal as such, in its then state and condition in place upon the surface, nor why its quantity, quality and value should not be estimated and compensation allowed therefor." He therefore found as facts the quantity and sizes of the coal, and received evidence of its value by the rule which plaintiff claimed, to wit: the market value at the breaker when the taking occured, less the estimated cost of removing, cleaning, screening and preparing for market. On subsequent consideration however he rejected this method for the measure of value, as being "speculative, contingent and fanciful," and not in accord with the settled rule laid down in our cases upon taking by eminent domain. In this we think there was error.

The market value of anything is what the owner can get for it, less the cost of marketing it.   This is the general rule, applicable as the measure of damages, where the object is to secure compensation only, especially as to personalty.   The cases of property which is part of the realty, but the value of which depends on its conversion into personalty, such as coal, iron ore, etc., have a different and exceptional rule of their own, because they involve expense and risk in the conversion of the material, which is realty in place, into personalty in the market, and to measure the value in place by the value in market, less the cost of getting it there, would, as was said by our Brother GREEN in Fulmer's Appeal, 128 Pa. 24, be giving " a share in the profits of carrying on the business without being subject to the risks or possible losses which might ensue."

There are no such elements in the present case, which is a far clearer case than Ege v. Kille, 84 Pa. 333, for the application of the same rule.   The coal in the culm bank, as already said, was personalty, and could have been marketed by the plaintiff at any time by ordinary business processes, well known and easily and definitely ascertainable as to expense.   There was nothing fanciful about the value so ascertained, nor anything speculative or contingent, more than there always is in the estimation of the cost of producing something not yet produced, or of the price to be realized on the sale of something not yet sold, in other words, the inevitable uncertainty of futurity, which attends all matters merely executory.   The objections pointed out by the learned judge are not legal difficulties in ascertaining a just rule, but practical difficulties in applying the rule to the facts.   These difficulties attend a large proportion of the cases tried in our courts, but they do not prevent the effort to apply the settled rules.   Thus, in every case of damages sought for injury by negligence, the length of life of the party injured and the money which he might have earned are matters of considerable uncertainty, but that does not prevent their approximate ascertainment by the evidence at hand. So, in the present case, if the plaintiff had insured the coal in the culm bank, and it had been consumed by one of the fires alleged to have been smouldering there so long, the jury, in an action against the insurance company, would have had to ascertain the quantity and value of the coal from the evidence avail-

able, and the difficulty or uncertainty of attaining an exactly accurate result would not have prevented a direction by the court to apply the usual rule. It is admitted that the plaintiff is entitled to compensation according to the just value of its property taken, and the fair measure of such value is what the plaintiff could have realized for the coal in the market, less the cost of getting it there. In estimating these matters the advantage of getting a present lump sum, instead of instalments from time to time by sales of the coal, and also the just allowance to be made for wear and tear of machinery, interest on capital invested, etc., are proper subjects for consideration.

The case of Becker v. R. R. Co., 177 Pa. 252, is not at all analogous to this. There the personal property in question was not taken at all by the railroad, but was claimed by the plaintiff to have been reduced in value by the necessity of removal, and the value sought to be recovered was not the market value of the goods as such, but a special value to plaintiff by reason of a trade good will at that locality.

The last assignment of error cannot be sustained. The compensation to which plaintiff is entitled is for what the property of which he has been deprived would have produced to him, not what it might be worth to the defendant taking it.

Judgment reversed and procedendo awarded.