## Cole *v.* Ellwood Power Company, Appellant.

216    283
f37SC ³337

*Statute of frauds—Parol license—Lease—Equity—Contract.*

If a license, or privilege to do something on the land of the licensor, is given by parol, then followed by the expenditure of money, on the faith of the parol agreement, it is irrevocable and is to be treated as a binding contract.  Equity treats the license thus executed as a contract giving absolute rights, and protects the licensee in the enjoyment of those rights.

A parol lease of a quarry reserving royalties confers upon the lessee a property right, and if the quarry is taken in condemnation proceedings he is entitled to damages for his loss.  If in such a case the testimony is conflicting as to whether the right had been terminated by notice to quit before the property was taken, the case is for the jury.

*Evidence—Writings—Duplicates.*

Where an exact carbon copy of an original paper is made on a typewriter at the same time as the original, signed by the same persons, executed in the same manner, and in every respect is an exact duplicate, one being delivered, the other preserved, both may be considered originals, and the one preserved may be offered in evidence without notice to produce the one delivered.

*Eminent domain—Condemnation of quarry—Damages—Measure of damages.*

In a proceeding to assess damages for the loss of a quarry condemned for public use, the measure of damages is the actual value of the stone in place, not the prospective and speculative value of that stone when cut and sold in the market.  Any stone actually severed from the ledge is personal property, and the measure of damages as to it, is its value at the place where appropriated.

Argued Oct. 16, 1906.    Appeal, No. 87, Oct. T., 1906, by defendant, from judgment of C. P. Lawrence Co., Dec. T., 1901, No. 14, on verdict for plaintiff in case of Edward Cole v. Ellwood Power Company.    Before MITCHELL, C. J., FELL, BROWN, MESTREZAT, POTTER, ELKIN and STEWART, JJ. Reversed.

Appeal from report of jury of view.    Before PORTER, P. J.

At the trial it appeared that plaintiff had a parol lease, reserving royalties, of the bowlders and stone in and on a tract of land in the borough of Ellwood.    He claimed that defendant had entered upon and seized the stone thereon.

Plaintiff's counsel proposed to show by the plaintiff and by other witnessess to be called, the damage that was sustained by the plaintiff by reason of the appropriation and taking of the stone on the plaintiff's lease.    Also, proposed to show by this and succeeding witnesses to be called, the market price of curbstone at that time, the quantity of curbstone that could be made from the stone on the plaintiff's lease, the cost of making the curbstone and putting them on board the cars and the royalty that was to be paid by the plaintiff to the Pittsburg company, and claimed when these facts were shown they had shown the damage which the plaintiff had sustained.

Defendant's counsel object as incompetent, irrelevant and immaterial.

The Court: It seems to the court the principle laid down in 84 Pa. page 333, is the proper rule of damages in this case, and we are unable to see it in any other light than that mentioned, that the measure of damages is the value of the product in the market, less the cost of transportation, quarrying and royalty.    The objection is therefore overruled, the offer admitted and an exception sealed for the defendant. [9]

Defendant offered in evidence paper designated as exhibit " A."

Plaintiff's counsel object as not being the best evidence and that there is no evidence whatever that any effort has been made by the defendant to secure the original.    Also, it is denied that this is a copy.

The Court: The objection is sustained and an exception sealed for the defendant. [4]

" Exhibit ' A.'    Defendant.

" Ellwood City, Pa., September 27, 1900.
" To Samuel Koch, Esq.

" You are hereby notified to discontinue quarrying stone on the property of this company and to remove immediately the stone already quarried south of the old Mill Site, as well as the derrick, tools, etc., used on large boulder from which you have hauled previous to last Monday, September 24.

" The royalty due this company must be paid, however, before the removal of derrick and machinery. No stone from the boulder on the edge of the creek will be permitted to be removed by the road which has heretofore been used and which is the property of this company.

" You will also take notice that no further stone from your operations can be deposited on the property of this company at the derrick recently erected near the head of Lawrence avenue.

" Yours truly,

" THE PITTSBURG COMPANY,

" By H. W. Hartman, President.

" Attest :
    " SAMUEL A. ROELOFS,
        " Secretary."
[Seal of Pittsburg Company.]

Defendant presented these points :

3. If the verdict of the jury should be in favor of the plaintiff it should be for the actual value of the stone in the ground, and they cannot take into consideration the price at which stone could have been sold after being mined and prepared for the market. *Answer :* Refused. [5]

4. The jury cannot take into consideration the profit the plaintiff might have made if he had been able to quarry all the stone upon the land and sell the same. *Answer :* Refused. [6]

5. The measure of damages is the value of the stone upon the land, subject to the payment of the royalty to the landowner. *Answer :* Refused, this point having been covered in our general charge. [7]

The court charged, inter alia, as follows :

[As we have already said, if you pass the first question in

this case favorable to the plaintiff, you then pass to the sec-
ond question and ascertain the amount of damages, if any, he
is entitled to receive.  In taking up this question you should
proceed to ascertain the damages under rules prescribed by
law.  It is contended by the defendant that the value of the
stone in place—that is, as they were there situated upon the
land—is the measure of damages.  It is our opinion, and we
so instruct you, that the measure of damages applicable to this
case is the value of the stone in the market less the cost of
transportation, quarrying and preparing the stone, the royalty
thereon and such other expenses as are necessary in placing
the stone upon the market.  Or, in other words, you will get
the cost of transportation, cost of quarrying and preparing
the stone, of royalty and such other costs and expenses nec-
essary and incidental to placing the stone upon the market
and the total thus obtained you will subtract from the mar-
ket value of the stone, and the difference between the total
cost and expenses thus obtained and the market value will be
the damages.

As to the amount of the various items of cost and expenses
you have the testimony of different witnesses and from their
testimony you are to ascertain the cost of placing the stone on
the market, and from the market value, which you will ascer-
tain from the testimony, take the cost and thus get the dam-
ages.] [8]

Verdict and judgment for plaintiff for $3,625.  Defendant
appealed.

*Errors assigned* among others were (4, 9) rulings on evi-
dence, quoting the bill of exceptions ;  (5–8) above instructions,
quoting them.

*Walter Lyon*, of *Lyon, McKee & Mitchell*, with him *B. A.
Winternitz* and *James J. Igoe*, for appellant.—The case is like
Yeakle v. Jacob, 33 Pa. 376, where the court held that an ab-
solute right to cut timber for fencing was an interest in the
land and within the statute of frauds and must be in writing,
which case is approved and followed in Huff v. McCauley, 53
Pa. 206, where it was held that a contract that one might take
coal for his works from the land of another, must be by grant.

So also is Bowers v. Bowers, 95 Pa. 477, where it is held that a contract for standing timber to be taken off at the discretion of the purchaser, as to time, is an interest in land within the meaning of the statute of frauds. This case is followed in Miller v. Zufall, 113 Pa. 317, and the same rule is laid down in Pattison's Appeal, 61 Pa. 294; Neumoyer v. Andreas, 57 Pa. 446.

If there are two contemporary writings, the counterparts of each other, one of which is delivered to the opposite party, and the other preserved, as they may both be considered as originals, and they have equal claims to authenticity, the one which is preserved may be received in evidence, without notice to produce the one which was delivered: Philipson v. Chase, 2 Camp. 110; Eisenhart v. Slaymaker, 14 S. & R. 153; Gaskell v. Morris, 7 W. & S. 32; Morrow v. Com., 48 Pa. 305; Otto v. Trump, 115 Pa. 425; Davis v. Ins. Co., 5 Pa. Superior Ct. 506.

The case at bar is ruled by R. R. Co. v. Balthaser, 119 Pa. 472, where a witness testified to fixing the value of the land by estimating the quantity of stone under the land and calculating its value: Searle v. R. R. Co., 33 Pa. 57; R. R. Co. v. Patterson, 107 Pa. 461; Reiber v. R. R. Co., 201 Pa. 49; Hamilton v. R. R. Co., 190 Pa. 51; Phila. Ball Club v. Phila., 182 Pa. 362; Phila. Ball Club v. Phila., 192 Pa. 632; Kossler v. R. R. Co., 208 Pa. 50.

_J. Norman Martin_, for appellee.—It is not necessary that a lease of a mine or quarry should be in writing: Moore v. Miller, 8 Pa. 272; Huff v. McCauley, 53 Pa. 206; LeFevre v. LeFevre, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; Swartz v. Swartz, 4 Pa. 353.

If, then, the Pittsburg company could not deprive the licensee of the benefit of his expenditure, clearly the appellant had no right which arose above that of the owner of the fee: Robbins v. Farwell, 193 Pa. 37.

A right to use a mine necessarily implies a right to possess it; and a grant of the use and possession, in consideration of something to be rendered is exactly what constitutes the lease of the thing to be possessed: Offerman v. Starr, 2 Pa. 394; Brandt v. McKeever, 18 Pa. 70; Johnstown Iron Co. v. Cam-

bria Iron Co., 32 Pa. 241; Harlan v. Lehigh Coal & Nav. Co., 35 Pa. 287; Clement & Masser v. Youngman, 40 Pa. 341.

Even a license to do something on the licensor's land, when followed by expenditures on the faith of it, is irrevocable, and is to be treated as a binding contract: LeFevre v. LeFevre, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; Swartz v. Swartz, 34 Pa. 353; Ebner v. Stichter, 19 Pa. 19; Huff v. Mc-Cauley, 53 Pa. 206; Grove v. Hodges, 55 Pa. 504; Johnston v. Cowan, 59 Pa. 275; Tront v. McDonald, 83 Pa. 144; Kemble Coal & Iron Co. v. Scott, 90 Pa. 332; Woodward v. Tudor, 81 * Pa. 382; Putnam v. Tyler, 117 Pa. 570; Hutchinson v. Kerr, 3 Pennypacker, 122; Eberly v. Lehman, 100 Pa. 542.

The law as to the measure of damages was properly stated by the court: Ege v. Kille, 84 Pa. 333; Lehigh Coal Co. v. Wilkesbarre, etc., R. R. Co., 187 Pa. 145; Morris, etc., Coal Co. v. Delaware, etc., R. R. Co., 190 Pa. 448; Railroad Co. v. Gilson, 8 Watts, 243; R. R. Co. v. Stayman, 2 W. N. C. 103; R. R. Co. v. Balthaser, 126 Pa. 1; Oak Ridge Coal Co. v. Rogers, 108 Pa. 147; Graham v. Railroad Co., 145 Pa. 504; Coleman's App., 62 Pa. 252.

OPINION BY MR. JUSTICE ELKIN, January 7, 1907:

Three questions are raised by this appeal, first, had appellee such an interest in the rocks and bowlders as to entitle him to compensation when appropriated; second, if his right to quarry was limited as to time, had notice to terminate the lease been served before the entry of appellant, and third, what was the proper measure of damages? It is contended for appellant that the right claimed by appellee in the quarry, is an interest in land, without limit as to time and within the statute of frauds. If this principle can be successfully invoked there can be no recovery, because the contract relied on to assert an interest is in parol. Yeakle v. Jacob, 33 Pa. 376; Neumoyer v. Andreas, 57 Pa. 446; Pattison's Appeal, 61 Pa. 294; Bowers v. Bowers, 95 Pa. 477; and Miller v. Zufall, 113 Pa. 317 are cited in support of this contention. These cases all relate to contracts for the sale of standing timber and the rule deducible therefrom is, that when the grant is for a perpetual right to cut, or for an indefinite period in which to remove, or at the discretion of the vendee, without a view to immediate severance, it is within

the statute of frauds and must be in writing.    The rule in such cases has been strictly enforced.    There is, however, another line of decisions of a different import, running parallel with the timber cases, and as uniformly observed.    LeFevre v. LeFevre, 4 S. & R. 241; Rerick v. Kern, 14 S. & R. 267; Swartz v. Swartz, 4 Pa. 353; Ebner v. Stichter, 19 Pa. 19, belong to the latter class.    In these cases the rule is recognized that if a license, or privilege, to do something on the land of the licensor, is given by parol, then followed by the expenditure of money, on the faith of the parol agreement, it is irrevocable and is to be treated as a binding contract.    Equity treats the license thus executed as a contract giving absolute rights, and protects the licensee in the enjoyment of those rights.    Again, in Moore v. Miller, 8 Pa. 272, this court held that a parol agreement to enter upon the land of another for the purpose of digging ore, erecting buildings and doing other necessary things in the prosecution of the work, paying for the privilege a certain fixed royalty for each ton of ore mined and removed, was a contract of lease and could be enforced.    The present case comes within the rule of these decisions, and the question of the statute of frauds may be eliminated from further consideration.    It is important, however, to consider what the exact terms of the parol agreement are in order to ascertain the rights of the parties to this action.    Was the privilege to quarry stone limited to the year when given, the "stone year" as suggested in the testimony of Hartman, or was it to be enjoyed for an indefinite period, or at the discretion of the licensor?    If the right was for a limited period, then it could be terminated at the expiration of that time.    It is contended that it was so terminated by notice to quit before the rights of appellee had attached.    These are questions of fact to be submitted to and determined by the jury under proper instructions by the court.    In this connection the ruling of the court below, in not permitting duplicate notice of September 27, 1900, to be admitted in evidence and considered by the jury, is assigned as error.    The offer was refused on the ground that it was secondary evidence and that the testimony did not disclose any effort to secure the original. The testimony showed that it was an exact carbon copy, made on a typewriter at the same time as the original, signed by the same officers, executed in the same manner, and in every re-

spect was an exact duplicate. The one was served, the other remained in the possession of the owner of the land. Appellant contends, that, as both were contemporary writings, the counterparts of each other, one of which was delivered and the other preserved, they may both be considered as originals, and the one which was preserved may be received in evidence without notice to produce the one which was delivered. This contention is based on the rule of our cases and must be sustained : Eisenhart v. Slaymaker, 14 S. & R. 153 ; Gaskell v. Morris, 7 W. & S. 32 ; Morrow v. Commonwealth, 48 Pa. 305. The duplicate notice should have been admitted in evidence and the refusal so to do was error.

The court below held that the proper measure of damages was, not the value of stone in place, but the value of the stone after it had been manufactured into curbstone, and sold in the market, less the cost of preparation, transportation and royalty. With this rule as to the measure of damages, witnesses were permitted to testify how much curbstone could be cut from the bowlders and how much it would sell for in the market, what the cost of manufacturing and transporting the same would be, the difference being the measure of damages to the appellee. Ege v. Kille, 84 Pa. 333 is relied on as ruling the case. It is true that such a measure of damages was sustained in that case, but that was an action of trespass for mesne profits between private parties, each of whom claimed title to the land in dispute, and, the title of Ege having been sustained, he brought an action against Kille to recover the mesne profits during the time that Kille had possession of the land and had actually taken the ore from the mines. Coleman's Appeal, 62 Pa. 252, and Oak Ridge Coal Co. v. Rogers, 108 Pa. 147, belong to this class of cases. In Graham v. Railroad Co., 145 Pa. 504, the distinction between the measure of damages arising out of a trespass and the assessment of damages accruing to the owner of property, taken under the right of eminent domain, was clearly pointed out. The learned counsel for appellee earnestly contends that the case at bar is an action to recover damages for a trespass. In this is the vice of his argument. This is not an action for trespass in the sense of the owner of land instituting proceedings against a person who had entered upon his property without authority of law. The appellant here had

the legal right, conferred by statute, to go upon the property of appellee and to appropriate the same to its own use. The rule as to the proper measure of damages in this case is found in Searle v. Railroad Company, 33 Pa. 57 ; Railroad Company v. Balthaser, 119 Pa. 472 ; Fulmer's Appeal, 128 Pa. 24, and many other like cases. The rule of these cases has never been departed from except where there had been actual severance of the coal, or ore, or stone, or other thing, the value of which was the basis of the proceedings. The proper measure of damages in this case is the actual value of the stone in place, not the prospective and speculative value of that stone when cut and sold in the market. The appellant under the law had the right to appropriate the rocks and bowlders and should pay appellee for his interest in the stone in place what that interest was worth at the time the appropriation was made. There is one item that must be treated separately in determining its value. The appellee testified that at the time of the entry there were about 500 or 600 yards of rubble backing on the ground which had already been severed from the bowlders, and that it was appropriated by appellant. It is well known that rubble stone is of irregular shapes and sizes, broken from larger stone in the process of quarrying or preparing the same for market. It is used in masonry for filling in between other courses of cut stone or for backing. While rubble backing cannot be prepared into cut stone, and is not expensive, it has a value. Its severance from the ledge made it personal property, and the proper measure of damages is its value at the place where appropriated. In determining that value it will not be necessary to consider the cost of manufacturing and transporting the same as in Lehigh Coal Co. v. Railroad Co., 187 Pa. 145, because its value can be easily and definitely fixed at the place of its location when the appropriation was made.

The fourth, fifth, sixth, seventh, eighth and ninth assignments of error are sustained.

Judgment reversed with a venire.