[No. 36166.   Department One.   August 16, 1962.]

SMITHROCK QUARRY, INC., *Respondent*, v. THE STATE OF WASHINGTON, *Appellant*.*

The Attorney General, John C. O'Rourke and Theodore O. Torve, Assistants, for appellant.

*John Spiller* and *D. Elwood Caples*, for respondent.

ROSELLINI, J.—This action was brought to recover compensation for an alleged taking of the plaintiff's rights in a rock quarry in the area of Vancouver, Washington. It was alleged that the plaintiff, under an assignment of lease, had the right to remove rock materials which were lying on the land, and that the defendant, by its highway construction activities, had made it impossible to remove the materials. The jury found in favor of the plaintiff's contentions and returned a verdict in the amount of $80,000.

*Reported in 374 P. (2d) 168.

It is the contention of the defendant, on this appeal, that the trial court allowed the jury to apply an improper measure of damages. The jury was instructed that it could find that the materials in question were personal property, and if it did so find, the measure of damages was the market value of the materials at the date of the taking. The jury was also instructed that it might find that the materials were a part of the realty, in which case the measure of damages to be applied was the market value of the unexpired leasehold.

It was stipulated that there were 160,000 cubic yards of rock material which had been severed from a solid rock bank in earlier blasting operations. The lease provided that the plaintiff could remove rock from the leased premises (which were unsuited for any other purpose) upon payment of a royalty of 2½ cents per ton. At the time of the taking, the lease had approximately five more months to run.

The plaintiff's evidence showed that it was in the process of removing the materials at the time of the taking, and that all of them could have been removed within the remaining months of the lease term. This fact was not disputed by the defendant.

Witnesses for the plaintiff testified that there was a market for the materials in place at the date of the taking and gave opinions of their value ranging from $100,000 to $120,000. The defendant's lone valuation expert testified that the lease could have been sold on the date of the taking for an amount which would equal a royalty of 7½ cents per ton, or a total of some $11,000.

According to the theory of the defendant, the court erred in permitting the jury to arrive at a valuation of the interest of the plaintiff which was based upon a multiplication of price per yard times the yardage. The cases cited in support of this contention all concern the taking of real property. In such cases, we have said that the proper measure of damages is the market value of the property as a whole, and that where the property taken has a mineral content, the value cannot be arrived at by multiplying the assumed number of cubic yards of material available by a given price

per unit. *State v. Mottman Mercantile Co.*, 51 Wn. (2d) 722, 321 P. (2d) 912. The reason for this rule is well stated in *United States ex rel. Tenn. Valley Authority v. Indian Creek Marble Co.*, 40 F. Supp. 811 (D. C., Tenn. 1941):

"Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per unit has met with almost uniform disapproval of the courts. This is true because such valuation involves all of the unknown and uncertain elements which enter into the operation of the business of producing and marketing the product. It assumes not only the existence, but the continued existence of a stable demand at a stable price. It assumes a stable production cost and eliminates the risks all business men know attend the steps essential to the conduct of a manufacturing enterprise. . . . It involves the assumption that human intelligence and business capacity are negligible elements in the successful conduct of business. . . . True it is that quality and quantity have a place in the mind of the buyer and the seller, but the product of these multiplied by a price per unit should be rejected as indicating market value when the willing seller meets the willing buyer, assuming both to be intelligent. Values fixed by witnesses on such a basis are practically worthless, and should not be accepted. . . ."

This rationale does not apply, however, where, as here, the materials have been severed and there is a market for them in their present condition at the time of the taking. There is nothing left to be done but to convey the title and accept the purchase price. The plaintiff's witnesses testified that they considered the value of the lease to be the same as the market value of the rock materials in place. There was no other value which could be derived from the land within the remaining time which the lease had to run.

Our extensive research and that of the parties to this action has revealed few cases—and none in this jurisdiction —which have dealt with the condemnation and valuation of rock or minerals that have been extracted or severed. However, in the Pennsylvania reports are found two cases dealing with the problem, one of which is directly in point. In that case, *Cole v. Ellwood Power Co.*, 216 Pa. 283, 65 Atl. 678, a quarry was leased by parol, with royalties re-

served, and was taken in condemnation proceedings. It was held that the measure of damages as to stone actually severed from the ledge was its market value at the place where it was appropriated. The court said:

" . . . The appellee testified that at the time of the entry there were about 500 or 600 yards of rubble backing on the ground which had already been severed from the bowlders, and that it was appropriated by appellant. It is well known that rubble stone is of irregular shapes and sizes, broken from larger stone in the process of quarrying or preparing the same for market. It is used in masonry for filling in between other courses of cut stone or for backing. While rubble backing cannot be prepared into cut stone, and is not expensive, it has a value. Its severance from the ledge made it personal property, and the proper measure of damages is its value at the place where appropriated. In determining that value it will not be necessary to consider the cost of manufacturing and transporting the same as in Lehigh Coal Co. v. Railroad Co., 187 Pa. 145 [41 Atl. 37], because its value can be easily and definitely fixed at the place of its location when the appropriation was made."

In the cited case, *Lehigh Coal Co. v. Wilkesbarre & E. R. Co.*, 187 Pa. 145, 41 Atl. 37, it was held that, where coal mined but left on the surface is taken in eminent domain, the measure of damages is the market value less the cost of marketing it.

In this case, as in the *Cole* case, there was a market for the rock at the place where it was located, therefore the cost of marketing was not a consideration. The testimony of the witnesses was that the rock could have been sold at the site on the date of condemnation, and that the purchasers would pay a definite price per cubic yard for it. This was, according to their testimony, the only value which the remaining leasehold had.

The cases and texts which the defendant cites concerning the proper method of arriving at the market value, or true value, of leases in general, are not concerned with a lease such as we have before us, where the only valuable incident is the right to remove materials from the land, and the amount and value of the materials can be definitely ascertained. For example, the defendant cites the case of *Arm-*

*strong v. Seattle,* 180 Wash. 39, 38 P. (2d) 377, 97 A. L. R. 826, in support of its contention that the value of the rock cannot be considered apart from the realty. In that case, gravel was taken from the plaintiff's land, but it had not been excavated prior to the taking. This court properly held that the measure of damages was the reduction in market value of the land. The case, however, does not control the question presented here.

In instructing on the measure of damages for the taking of the rock, the trial court did not advise the jury that it should consider what amount of the material could be removed in the remaining five months. The defendant does not make a point of this, and, in view of the fact that there was no dispute in the evidence on this question, and all witnesses were agreed that the rock could all be removed, we do not find the failure to so instruct reversible error.

We hold that the trial court properly permitted the jury to find that the plaintiff's damages were equal to the value of the rock materials which had been severed and could be sold at the date of the taking and removed before the expiration of the lease. If there was error in the instructions, it favored the defendant, for the jury was told that it could find that the severed rock was realty, and thus determine a question of law in favor of the defendant; whereas the law is settled that the severing of rock in this manner changes its character to that of personalty. No complaint is made of these instructions.

The defendant also contends that it was improper to allow interest on the judgment. The cases which it cites, *Public Util. Dist. v. Washington Water Power Co.,* 20 Wn. (2d) 384, 147 P. (2d) 923, and *Haynes v. Columbia Producers, Inc.,* 54 Wn. (2d) 899, 344 P. (2d) 1032, do not support this proposition. It is well settled that interest is allowable in an action for compensation for a taking under the power of eminent domain and starts to run from the date of the taking. *Great Northern R. Co. v. Seattle,* 180 Wash. 368, 39 P. (2d) 999.

The judgment is affirmed.

FINLEY, C. J., WEAVER, OTT, and FOSTER, JJ., concur.