Isenbergh, Appellant, *v.* Fleisher.

Argued September 9, 1958.   Before RHODES, P. J.,
HIRT, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.
(GUNTHER, J., absent).

*F. C. Fiechter, Jr.,* for appellant.

*Herbert Fineman,* with him *Fineman & Fineman,*
for appellee.

OPINION BY ERVIN, J., November 14, 1958:

In this action of assumpsit, tried before a judge
without a jury, the plaintiff sought damages for the
alleged breach of a contract for the sale of real es-
tate.

A real estate broker, Dirk Slentz, showed the house, which was a furnished sample house, to plaintiff and his wife and introduced them to the defendant, who was the title owner. The sample house was one of a number of houses constructed or being constructed by defendant and Herman Glazer, his partner. On Friday afternoon, August 24, 1956, the defendant, Forrest B. Fleisher, had some discussion with the plaintiff as to the sale of the house. The defendant wanted $26,250.00 for the house and furnishings. The plaintiff offered $25,500.00. Defendant testified that he told them he would submit that price and let them know whether a sale would take place. Then the plaintiff paid a deposit of $100.00 in cash and received the following "Sale Deposit Receipt":

"No. 2022—Sale Deposit Receipt

Printed and sold by Yeo & Lukens, Phila.

8-24-1956

RECEIVED OF Paul N. Isenbergh

One Hundred Dollars

To be used as a Deposit in the Purchase of Premises Lot No. 3 Trephanny Valley, Strafford, Pa.

For the sum of 25,500 Dollars,

*Subject to the approval by the owner of an Agreement of Sale* which the said Paul Isenbergh agrees to execute on Sept. 4 1956 or forfeit said deposit money, and all rights and claims to said premises. *Said Agreement of Sale to set forth the full terms and Conditions of this Sale.*

$100.00                    By Forrest A. Fleisher."

(Emphasis added)

On the same day Fleisher wrote in longhand a list of seven items which he said were dictated to him by Mr. Davison, father-in-law of plaintiff, and which the plaintiff wanted done. This list was not signed by Fleisher nor was it included in the written receipt

above described. Fleisher testified that he never agreed to do this work "because that was part of his offer; that was among several things to be resolved."

On Monday morning, August 27, 1956, Fleisher called the agent, Slentz, and told him "My partner and I don't wish to accept the offer of the Isenberghs." Later Slentz asked defendant and his partner to meet with the Isenberghs at Slentz' office on September 4, 1956. At this meeting the Isenberghs had an attorney, Mrs. Applegarth, present. A formal written agreement, signed by the Isenberghs, was presented to defendant for signature. He refused to sign the agreement because he and his partner wanted $26,000.00 for house and furnishings. The attorney, Mrs. Applegarth, told defendant that he had better sign the agreement of sale or they would take legal proceedings to tie up the property.

In the formal written agreement as presented not only were the seven items heretofore mentioned included as things to be done by the seller but an eighth item, to wit: "Widen street and install curbing on premises side of Weadley Road as agreed with Tredyffrin Township Authorities.", was added to the list. This item had not been mentioned on August 24 but it was put into the agreement by Slentz of his own accord. The plaintiff's attorney called a settlement meeting for October 15, 1956 at Commonwealth Land Title Insurance Company, Philadelphia, Pennsylvania. At this meeting the receipt for $100.00 down payment, a check for $2,450.00, the balance of ten per cent of the purchase price, and a check for $9,500.00, being the balance of the down payment on the sale price used at the time of settlement, were presented. The attorney for the defendant tendered a deed for the premises on behalf of the defendant for the purchase price of $25,500.00. Defendant testified that he did this be-

cause the property was tied up by a lawsuit and not because there was any contract of sale. The attorney for the plaintiff made a request for the payment of $800.00 damages claimed to have been sustained by the plaintiff as a result of his not being able to occupy the premises on or about September 10, 1956. The request was refused by the defendant. No settlement was had.

At the conclusion of the trial both sides presented requests for findings. Decision was reserved.

On March 14, 1958 Judge JONES filed the following finding: "STATEMENT AS TO FINDING. The Finding for the plaintiff in the sum of $407.40 consists of (1) One Hundred Dollars deposit with interest thereon from August 24, 1956, in the amount of $9.33, (2) $15 appraisal charge, (3) $25. title company charge, (4) Rental value of $225. per month for period of September 14, 1956, to December 3, 1956, (2 19/30 months) in the amount of $592.50 less a credit thereon of interest on the purchase price of $25,500 less $100 paid August 24, 1956, from September 14, 1956, to December 3, 1956, in the amount of $334.43. JONES, Trial Judge. March 14, 1958."

Thereafter defendant filed motions for a new trial and for judgment n.o.v. After oral argument before the court in banc both motions were dismissed and the following order was made: "Items (1), (2) and (3) of the Trial Judge's Statement as to Finding are affirmed. Item (4) of the Statement as to Finding is reversed. The Finding for the Plaintiff as Defendant in the Counterclaim is affirmed. Judgment is entered for the Plaintiff in the sum of $149 33/100 with interest thereon from the date of Finding and for the Plaintiff as Defendant in the Counterclaim. An exception is granted to the Plaintiff and Defendant as to each respectively."

Plaintiff appealed.

The appellant here and plaintiff below did not file any motion for a new trial or judgment n.o.v. Exceptions were allowed by the court in banc to both parties. Therefore on this appeal the appellant is limited to the single question which related to the action of the court in banc in removing from the items of damage allowed to plaintiff item (4), the rental value of the property for the period from September 14, 1956 to December 3, 1956 (2 19/30 months) in the amount of $592.50, less a credit thereon of interest on the purchase price of $25,500.00, less $100.00 paid August 24, 1956, from September 14, 1956 to December 3, 1956, in the amount of $334.43.

The court below found that "The Sale Deposit Receipt in and of itself is not a contract" but that "The oral evidence presented in conjunction with the Sale Deposit Receipt was a parol contract for the sale of the premises", relying upon the case of *Roberts v. Roesch,* 306 Pa. 435, 439, 440, 159 A. 870. It then correctly applied the rule for damages recoverable for breach of a parol contract for the sale of real estate, limiting the recovery to the money paid and the expenses incurred by the vendee in endeavoring to procure title. The reason for this conclusion is well expressed by Mr. Justice KEPHART in *Seidlek v. Bradley,* 293 Pa. 379, 381, 142 A. 914, in the following language: "The reason for the rule is that the contract is within the Statute of Frauds; either party may refuse to execute it, and, in availing themselves of that right, neither would be guilty of fraud or wrongdoing. If a rule permitted recovery beyond the hand money paid and expenses, it would in effect be specifically enforcing the contract. By so doing, the rule would annul the Statute of Frauds altogether: . . . ."

In our opinion the court below reached a correct result which might also have been reached for another reason. On appeal we may consider another reason, even though it had not been considered in the court below, in order to sustain a correct decision if it can be sustained for any reason whatsoever: *Sherwood v. Elgart*, 383 Pa. 110, 114, 115, 117 A. 2d 899.

While there must be a written agreement for the sale of real estate if it is to be enforceable, yet there may be a writing meeting the requirements of the Statute of Frauds and, because of the fact that the parties contemplate a more formal written instrument, the question may still arise whether there is a completed, binding agreement in the absence of the execution of such instrument. Whether the parties to an oral or informal agreement become legally bound prior to the drafting and execution of the contemplated formal writing is a question largely of intent on their part so to become or not to become bound. The intent of the parties is to be determined by the surrounding facts and circumstances of the particular case. 122 A.L.R. 1217; 165 A.L.R. 759. Under the facts and circumstances in the present case we are convinced that the parties never intended to be legally bound until the formal contract, which was to be presented on September 4, 1956, had been approved by the owner with the full terms and conditions of the sale, including the purchase price, set forth therein. The evidence clearly indicates that Fleisher and his partner never approved the price of $25,500.00 nor did they agree to do all of the items set forth in the formal written agreement which the purchaser wanted done to the property. This is particularly true as to the 8th item: "Widen street and install curbing on premises side of Weadley Road as agreed with Tredyffrin Township Authorities." The defendant promptly conveyed to the

plaintiff their rejection of the offer and no contract, either written or oral, had ever been reached. The court below well might have used this reasoning in arriving at the amount of damages recoverable.

While it is true that an intention to reduce a valid existing contract to some other form may not affect its validity, yet it is essential to the enforcement of such an informal contract that the minds of the parties should meet upon all the terms as well as the subject matter. If anything is left open for future consideration, the informal paper cannot form the basis of a binding contract: *Onyx Oils & Resins, Inc. v. Moss,* 367 Pa. 416, 420, 80 A. 2d 815.

*Schermer v. Wilmart,* 282 Pa. 55, 127 A. 315, is relied upon by the appellant to sustain his position. While the receipt in that case provided for "A regular agreement of sale for the selling of the above mentioned property to be made on the day the additional $210.00 are paid", it did not contain language like that used in the present case expressly stating that the transaction was subject to the approval of an agreement of sale, which agreement of sale was to contain the full terms and conditions. In the *Schermer* case all of the essential terms and conditions had been agreed upon and there was a meeting of the minds thereon. In the present case there was no agreement upon purchase price nor was there any agreement upon the numerous items for the completion of the property which were to be set forth in the formal written agreement. The receipt in the *Schermer* case contained nothing which made it conditional or subject to subsequent approval. In the present case the receipt contained language not merely providing for the more formal agreement but also language which expressly made the condition that approval of the formal writing, together with all of its terms and conditions, was required before there was

to be a legally binding obligation. *Sladkin v. Greene,* 359 Pa. 528, 59 A. 2d 105, also relied upon by appellant, is not apposite for the reason that there was in that case an executed written agreement of sale. Likewise, in *Sawert v. Lunt,* 360 Pa. 521, 62 A. 2d 34, cited by the appellant, the receipt contained no language expressly making it conditional upon the subsequent approval of the writing.

Our recent case of *Emerman v. Baldwin,* 186 Pa. Superior Ct. 561, 142 A. 2d 440, is also cited by appellant but in that case, although a formal lease was later to be executed, there was a meeting of the minds on all of the essential provisions of the agreement. These provisions were contained in a written memorandum. Furthermore, the surrounding circumstances clearly indicated that the parties intended to be legally bound without waiting for the formal lease which was to be executed later. This meeting of the minds was evidenced by the statement of the lessor when he said: "All right, Allen. You have a deal. The place is yours." Furthermore, the lessor's refusal to enter into a resale agreement with a third party until June 1 clearly indicated that the lessor understood that there was in force an existing binding agreement. Likewise, in *Moudy v. W. Va. Pulp & Paper Co.,* 385 Pa. 39, 121 A. 2d 881, the terms were full and complete and were mutually understood and agreed upon. The minds of the parties had met and there was a valid and binding agreement.

The appellee filed a written motion to quash the present appeal but in view of our disposition of the appeal on the merits, this motion to quash will be dismissed without consideration of the reasons therein set forth.

Judgment affirmed.