**Lake Naomi Club v. Pinecrest Development Corp.**

C.P. of Monroe County, no. 3679 CV 2000.

*Ronald J. Reybitz* and *Brian E. O'Neill,* for plaintiff.
*John T. Carroll,* for defendant.

WORTHINGTON, *J.,* June 23, 2000—On May 31, 2000, plaintiff filed an action for declaratory judgment, requesting that the court decide the legal relationship between the plaintiff and defendant by reason of an agreement entered into in 1984. Plaintiff requests that the court find that a valid, enforceable contract exists between plaintiff and defendant for the use of the Beaver Brook recreational facility by reason of the aforesaid agreement. Plaintiff simultaneously filed a petition for preliminary injunction, requesting that the court prohibit defendant

from denying plaintiff access to Beaver Brook, pending a further hearing. We held a hearing on the preliminary injunction on June 15, 2000 and will now rule on the matter.

## FINDINGS OF FACT

(1) Plaintiff, Lake Naomi Club, (LNC), is a developed resort community comprised of the Lake Naomi and Timber Trails subdivisions. These two subdivisions include approximately 1,850 family residences, 85 percent of which are occupied only on a seasonal basis as vacation homes.

(2) Membership in the Lake Naomi Club requires ownership of property within the Lake Naomi Club community and payment of membership fees. Approximately 1,350 of the 1,850 homeowners are members of the Lake Naomi Club.

(3) Logan Steele was the president of the Pinecrest Lake Club, (PLC), a subsidiary of Deer Run Inc., until his death on September 14, 1986. Pinecrest Development Corporation, (PDC), owned and operated by Edward Carroll, purchased Deer Run Inc., including PLC, from Mr. Steele's estate.

(4) Pinecrest Lake Club (now PDC) is a developed resort community that consists of families who utilize the residences mostly as weekend and vacation homes.

(5) LNC and PLC (now PDC) are adjoining properties separated only by Pa. Route 940. LNC is north of Route 940 and PDC is to the south.

(6) Logan Steele developed LNC in the early 1960s and PLC in 1984.

(7) Logan Steele sent a letter, dated May 14, 1984, to Al Weigand, then serving as president of the LNC Board of Governors, proposing to move LNC's then existing recreation center to a location on PLC property at no cost to LNC. Mr. Steele would also expand the facility to include an ice-skating rink, an all-purpose sports field, hiking trails and cross-country skiing trails. (See plaintiff's exhibit 1.)

(8) LNC must allow PLC members to use the Lake Naomi Clubhouse, the Timber Trails Golf Club, and the Timber Trails Equestrian Center.

(9) On July 28, 1984, the Lake Naomi Board of Governors Ad Hoc Pinecrest Committee met to discuss Mr. Steele's proposal and the minutes of that meeting were transcribed. (See plaintiff's exhibit 2.)

(10) Mr. Steele sent a letter, dated September 12, 1984 to Al Weigand stating that he had reviewed at length the Board of Governors Ad-Hoc Pinecrest Committee minutes of the July 28, 1984 meeting and that he was in agreement with the plan that was "spelled out in the minutes of the ad-hoc committee" meeting. (See plaintiff's exhibit 3.)

(11) PDC, at the direction of PLC commenced construction of the Beaver Brook recreational facility, located on PLC (now PDC) property, in late 1984 and continued until early 1986.

(12) From 1986 until present, LNC has created and administered summer day camps at Beaver Brook which are open to members of LNC, PLC, and presently to members of PDC.

(13) From approximately 1990 to June of 1997, Wee Wons Day Care Center, at the behest of PDC, created

and administered summer day camp programs at Beaver Brook. PDC received $25,000 in rental income from Wee Wons annually. Both Wee Wons' programs and LNC programs were run at the Beaver Brook recreational facility.

(14) LNC has been responsible for all expenses related to indoor maintenance and operation of Beaver Brook and PDC is responsible for all expenditures related to property ownership. LNC pays approximately $15,000 per year in operating expenses for Beaver Brook.

(15) LNC has spent approximately $17,000 in expenses related to advertising their upcoming summer programs. The advertising includes the creation and distribution of flyers and booklets outlining the facilities, the programs and the events scheduled.

(16) LNC has expended approximately $10,000 in payroll for the 30 staff members who will be directly involved in the LNC summer day camps.

(17) Since the fall of 1999, the parties have attempted to negotiate different terms for the management of the Beaver Brook recreational facility. The parties ceased negotiating on April 29, 2000, when the most recent proposal was declined by LNC.

(18) PDC, by letter dated May 10, 2000, informed LNC that it would be denied access to the Beaver Brook facility.

(19) PDC has contracted with Wee Wons to provide summer camp programs during the year 2000 summer. PDC is not receiving any rental or other income from Wee Wons for use of the Beaver Brook facility.

(20) LNC cannot operate its summer camp without disruption if Wee Wons is allowed to operate at the same location.

## DISCUSSION

LNC requests that the court grant them a preliminary injunction, enjoining PDC from denying LNC and its employees exclusive access to the Beaver Brook recreational facility until further hearing. Pa.R.C.P. 1531 states that in determining whether a preliminary injunction should be granted, the "court may act on the basis of the averments of the pleadings or petition and may consider affidavits of parties or third persons or any other proof which the court may require." A preliminary injunction is an extraordinary remedy that should only be granted where a party established a clear right to the relief requested and when there exists a need for unusual haste so that a clear right may be protected from immediate and irreparable harm. *Soja v. Factoryville Sportsmen's Club,* 361 Pa. Super. 473, 478 n.1, 522 A.2d 1129, 1131 n.1 (1987).

The purpose of a preliminary injunction is to preserve the status quo and to prevent irreparable harm until the merits of the dispute can be heard. *Kee v. Pennsylvania Turnpike Commission,* 743 A.2d 546, 549 (Pa. Commw. 1999). It operates to maintain the status of affairs as they existed prior to the underlying dispute. The court must determine whether the activity sought to be restrained is actionable and reasonably subject to abatement by the issuance of a preliminary injunction. *New Castle Orthopedic Associates v. Burns,* 481 Pa. 460, 464, 392 A.2d 1383, 1385 (1978); *West Penn Specialty MSO Inc. v. Nolan,* 737 A.2d 295 (Pa. Super. 1999).

Once the court has determined that the activity sought to be restrained is actionable and that it is reasonably subject to abatement, the court must also determine

whether: (1) relief is necessary to prevent immediate and irreparable harm which cannot be compensated by damages; (2) greater injury will occur from refusing the injunction than granting it; and (3) whether the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful act. *Warehime v. Warehime,* 722 A.2d 1060, 1063 (Pa. Super. 1998); *Schaeffer v. Frey,* 403 Pa. Super. 560, 565, 589 A.2d 752, 754-55 (1991); *Ucheomumu v. County of Allegheny,* 729 A.2d 132, 134 (Pa. Commw. 1999).

In the present matter, the court must first determine whether the conduct sought to be restrained is actionable. A court sitting in equity cannot grant a preliminary injunction unless this first requirement is met. *Warehime,* 722 A.2d at 1063. As stated earlier, LNC has filed a declaratory action, requesting that the court find that a valid, enforceable contract exists between LNC and PDC by reason of the agreement reached in 1984 between Logan Steele, then president of PLC, and LNC. On May 14, 1984, Mr. Steele sent a letter to Al Weigand stating that he wished to address the board of governors regarding a proposal to create a new recreational facility that would be beneficial to both groups. Plaintiff's exhibit 2 is the minutes of the meeting of a special committee created for the purpose of addressing Mr. Steele's proposal. On September 12, 1984, Mr. Steele sent a letter to Al Weigand stating that he had reviewed at length the minutes of the meeting. He also stated that although the minutes of the meeting committed him to do more than he had planned and restricted some of the actions which he might have taken, he agreed to the terms of the agreement as spelled out in the minutes of the meeting. Within

a few months, construction of the new facility by PDC began and Beaver Brook was fully constructed by the spring of 1986. Relying on Mr. Steele's proposal to construct a new recreational facility, LNC converted their former recreational facility into administrative offices. The question before us is not whether a contract does exist, but whether at a later hearing on the merits of the underlying action, LNC has a reasonable probability of success.

After reviewing all the pertinent facts, the court finds that LNC has a reasonable probability of success in proving that the agreement between PLC and LNC created an irrevocable license to use the Beaver Brook recreational facility for LNC's summer camp programs. We will first address the formation of the license agreement between the parties. A contract is created where there is mutual assent to the contract by parties who have the capacity to contract. *Shovel Transfer and Storage Inc. v. Pennsylvania Liquor Control Board,* 559 Pa. 56, 62-63, 739 A.2d 133, 136 (1999). If the parties agree upon the essential terms and intend them to be binding, a contract is formed even though they intend to adopt a formal document with additional terms at a later date. *Hartman v. Baker,* 2000 WL 527891 *3 (Pa. Super. 2000). Where the existence of an informal contract is alleged, it is essential to the enforcement of such an informal contract that the minds of the parties should meet on all the terms as well as the subject matter. "If anything is left open for future [negotiation], the informal paper cannot form the basis of a binding contract." *Isenbergh v. Fleisher,* 188 Pa. Super. 99, 106, 145 A.2d 903, 907 (1958). The conduct of the parties may be taken into consideration to

show whether the parties are engaged in a contract. *Schreiber v. Olan Mills,* 426 Pa. Super. 537, 541-42, 627 A.2d 806, 808 (1993). An agreement is definite if it indicates that the parties intended to make a contract and if there is an appropriate basis upon which the court can fashion a remedy. *Biddle v. Johnsonbaugh,* 444 Pa. Super, 450, 458, 664 A.2d 159, 163 (1995).

In the present matter, the court finds that LNC has a reasonable probability of success at a future hearing on the merits of whether a contract exists. We believe that a meeting of the minds occurred on all the essential elements for the creation of a contract for an irrevocable license. Mr. Steele sent a letter to Al Weigand outlining a proposal by which Mr. Steele would undertake moving LNC's then recreational center to a location on PLC property and expand it. He agreed to accomplish this at his own expense. In return he asked that members of PLC be allowed access to certain facilities controlled by LNC.

At the Board of Governors Ad-Hoc Pinecrest Committee meeting on July 28, 1984, the specific issue of Mr. Steele's proposal was discussed. The minutes of that meeting show that LNC was concerned about their present recreational facility. The board members discussed the advantages and disadvantages of Mr. Steele's proposal and outlined what each party's prospective duties would be. In a letter dated September 12, 1984, Mr. Steele wrote to Al Weigand that he had read the minutes of that meeting. He noted that there were differences between what he had proposed and what the board believed that he had proposed. Nevertheless, Mr. Steele agreed to the undertaking as spelled out in the minutes

of that meeting. The Beaver Brook recreational facility was completed in 1986, and since that time LNC has operated summer day camps every year until the present year when PDC refused LNC access to the site. Jeffrey Evans, executive vice president of LNC stated that PLC and PDC members are allowed access to all the LNC facilities and programs outlined in the agreement.

The only term not discussed was the termination date of the agreement. In Pennsylvania, a license is generally considered a mere personal "privilege to perform an act or series of acts on the land of another." *Dailey's Chevrolet Inc. v. Worster Realties Inc.,* 312 Pa. Super. 275, 281, 458 A.2d 956, 960 (1983). A license is ordinarily revocable at will. *Kovach v. General Telephone Co. of Pa.,* 340 Pa. Super. 144, 148, 489 A.2d 883, 885 (1985). If a license is granted and is then followed by the expenditure of money on faith of that agreement, the license is irrevocable and is treated as a binding contract. *Id.; Cole v. Ellwood Power Co.,* 216 Pa. 283, 289, 65 A. 678, 680 (1907). "Once irrevocability is established successor in title takes subject to an irrevocable license if they had notice of the license before the purchase." *Id.* (quoting *Harkins v. Zamichieli,* 266 Pa.Super. 401, 407-408, 405 A.2d 495, 498 (1979)).

In the present matter, LNC has expended money in reliance on the agreement. The former LNC recreational facility was destroyed to make room for an administrative building. They never built their own recreational facility because they relied on the Beaver Brook facility. They have paid for the year round maintenance and operating costs of the facility even though LNC uses the facility primarily during the summer months. Further,

LNC has expended approximately $17,000 in advertising the upcoming events as well as $10,000 for personnel for the summer camps. We find that the activity sought to be restrained is actionable and that LNC has a reasonable probability of success.

The second requirement for a preliminary injunction is that the issuance of a preliminary injunction will abate the alleged wrongdoing. In this matter, the issuance of the preliminary injunction would abate the alleged wrongdoing because it would allow LNC to access the Beaver Brook facility and resume preparations for the summer camps. LNC has been planning these summer camps since September of 1999 and has spent money advertising these events. The grant of the preliminary injunction would also allow the parties to return to the positions that they were in prior to PDC denying LNC access to Beaver Brook.

LNC must also prove that they will suffer irreparable harm that is not compensable by damages. *Warehime v. Warehime,* 722 A.2d 1060, 1063. An injury is regarded as 'irreparable' if it will cause damage which can be estimated only by conjecture and not by an accurate pecuniary standard. *Sheridan Broadcasting Networks Inc. v. NBN Broadcasting Inc.,* 693 A.2d 989 (Pa. Super. 1997). In this case, LNC will suffer more than money damages. If the preliminary injunction is not granted, LNC would have wasted $17,000 in advertising expenses plus any payroll expenditures in preparation for the summer camps. The irreparable harm that will be suffered is that its members will be unable to use these advertised children's summer camps. As testified by Jeffrey Evans, executive vice president of LNC, a majority of the homes

in the LNC and Timber Trails communities are comprised of vacation and summer homes. Members of these communities have come to expect these summer camps, especially since the camps have been advertised. LNC may lose members because they do not have the facilities to provide these programs without the use of Beaver Brook. This loss would amount to loss of goodwill, which the Superior Court in *West Penn Specialty MSO Inc. v. Nolan,* 737 A.2d 295 (Pa. Super. 1999) found to be an irreparable harm. Many of the people who vacation in LNC expect that there will be summer camps. Without these camps, some vacation-goers may simply cease to visit the area or cease their memberships to the Lake Naomi Club. Therefore, LNC will suffer irreparable harm if this court does not grant the preliminary injunction,

The fourth requirement that LNC must prove is that a greater injury will occur from refusing the injunction than granting it. *Warehime v. Warehime,* 722 A.2d at 1063. Edward Carroll, president of PDC testified that Wee Wons, a third party, has been hired to provide summer camp activities at Beaver Brook. He testified that he knows of 27 children who have been enrolled in the Wee Wons program. Jeffrey Evans testified that over 100 youths have already signed up for the summer programs provided by LNC, but this number could increase as high as 200 youths, The LNC programs are open to both members of LNC and PDC and have been in existence since 1986 at the Beaver Brook facility. Mr. Carroll also testified that he is not receiving any rental income from Wee Wons for the use of Beaver Brook.

If the court does not grant the preliminary injunction, LNC will suffer a greater harm in that they have expended

money and made preparations for the summer events. In addition, 100 children would have to be enrolled in another program, if such an alternate program exists. PDC would not suffer any great harm. Only 27 children have been enrolled in the Wee Wons program as compared to over 100 children in the LNC programs. Mr. Carroll also testified that he is not receiving any rental income from Wee Wons and therefore the grant of a preliminary injunction would not cause him any monetary loss. The court finds that greater harm will result if the preliminary injunction is *not* granted than if the court were to grant LNC a preliminary injunction.

The final requirement that LNC must meet is whether the injunction will restore the parties to the status quo as it existed immediately before the alleged wrongful act. *Warehime v. Warehime,* 722 A.2d at 1063. If the preliminary injunction is granted, LNC will regain access to the Beaver Brook facility, as they did prior to PDC refusing them admittance. LNC has created and administered summer day camps at Beaver Brook since 1986 and is ready to continue doing so. The preliminary injunction will return the parties to their positions prior to PDC denying LNC access. We find that LNC has met this burden.

Accordingly, we enter the following order:

## ORDER

And now, June 23, 2000, it is ordered as follows:

(1) Plaintiff's petition for preliminary injunction is granted. Defendant Pinecrest Development Corporation is enjoined from denying plaintiff Lake Naomi Club *exclusive* access to the Beaver Brook Recreational Facility for the duration of the plaintiff's summer camp programs.

(2) A hearing on plaintiff's action for declaratory judgment is set for September 20, 2000 at 9:30 a.m. in courtroom no. 5, Monroe County Courthouse, Stroudsburg, Pennsylvania.

(3) All discovery shall be concluded within 60 days from the date of this order.

(4) Counsel shall file with the court and provide to opposing counsel a pre-trial memorandum meeting the requirements of 43 J.D.R.C.P. 212(6) at least 15 days prior to hearing.

(5) Within seven days from the date of this order, plaintiff shall deposit the sum of $5,000 with the Monroe County prothonotary's office in accordance with Pa.R.C.P. 1531(b)(2).

(6) Donna Conte, official court stenographer is directed to transcribe the notes of testimony of the hearing held on June 15, 2000 and make copies thereof available to counsel for both parties. The foregoing testimony shall be admitted as part of the record at the trial of this proceeding. Each counsel is directed to deposit the sum of $125 with the official court stenographer toward the costs of transcription of the notes of testimony.